ATTORNEY FOR APPELLANT
Rick M. Myers
Lautzenheiser, Myers, Carnall,
    Spear & Kiracofe, PC
Bluffton, Indiana

ATTORNEYS FOR APPELLEE
Joseph M. Johnson, II
Joseph M. Johnson, PC
Decatur, Indiana

In the
Indiana Supreme Court

**FILED**
Jun 26 2008, 3:38 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 01S04-0711-CV-514

IN RE THE MARRIAGE OF NICOLE L. HUSS AND DAVID M. HUSS.

NICOLE L. HUSS,                                    *Appellant (wife)*

v.

DAVID M. HUSS                                    *Appellee (husband)*

Appeal from the Adams Circuit Court, No. 01C01-0504-DR-37
The Honorable Frederick A. Schurger, Judge

On Transfer from the Indiana Court of Appeals, No. 01A04-0611-CV-680

**June 26, 2008**

**Dickson, Justice.**

In seeking dissolution of their marriage, the husband and wife each declared that there were four children born of their marriage, and each requested both temporary and permanent custody of all four children from the dissolution court. But while the dissolution case was pending in Adams Circuit Court, the wife initiated a separate paternity action in Wells Circuit Court and obtained a final order establishing that another man was the biological father of one of these children and granting her custody of that child. The wife then sought to use the paternity judgment as a basis to dismiss in the dissolution case all custody proceedings regarding said child. Following a contested final hearing, the Adams Circuit Court ordered the marriage dissolved, divided the marital property, awarded the husband custody of all four children, and

ordered child support. The Court of Appeals, in a memorandum decision, vacated the portions of the dissolution decree pertaining to the said child but affirmed the award of custody of the three other children to the husband. Huss v. Huss, 01C01-0504-DR-37 (July 25, 2007). We granted transfer and now affirm the dissolution court's custody determination.

During the first nine years of their marriage, David and Nicole Huss had three children, after which the wife separated from the husband and children for eight months, but returned to the marital home four to five months pregnant with another man's child, and the parties reconciled. Upon the birth of this child, the wife listed the husband as the father on the birth certificate and gave the child the husband's last name. Four years later, when the parties subsequently sought a dissolution of their marriage in the Adams Circuit Court, both the husband's petition for dissolution and the wife's counter-petition declared that there were four children of the marriage and identified the names and birthdates of each child. Both parties sought both temporary and permanant custody of all four children. Following a contested hearing, the dissolution court entered a provisional order that the husband have temporary custody of the children and that the wife pay child support. The wife next filed an emergency motion to modify the provisional order, again seeking custody of all the children. Upon the denial of her motion, the wife sought and received a final hearing date in the dissolution action, August 14, 2006. Throughout these proceedings, the wife did not raise any issue regarding the paternity of any of the children.

On August 8, 2006, less than one week before the hearing, the wife filed a motion to dismiss one of the children from the dissolution proceedings, alleging that this child was not a child of the marriage and attaching a copy of a July 26, 2006, paternity order from the Wells Circuit Court that reflects a final hearing on July 24. Filed "long after this dissolution proceeding was started," Tr. at 7-8, the paternity action had been brought in the name of the child "[b]y her next friend and Mother Nicole L. Huss," the wife herein. Appellant's App'x at 106. The one-page paternity order noted the appearance of the wife, her attorney, and the *pro se* respondent putative father; summarily found the child to be the biological child of the respondent; awarded "sole legal and physical custody" of the child to the child's mother, the wife herein; ordered child support; and prohibited the biological father from "any contact or parenting

2

time with the minor child" until he obtains professional counseling services. *Id.* After further briefing and a hearing, the dissolution court took under advisement the wife's motion to dismiss.

Following a contested final hearing, the dissolution court denied the wife's motion to dismiss, dissolved the marriage, divided the marital property, and provided for child support and parenting time. The decree, entered October 18, 2006, found the husband and wife to be the biological parents of three children, the custody of whom it awarded to the husband; that during their marriage a fourth child was born, whose biological father was determined in a separate paternity proceeding to be a person other than the husband; and that, as to the paternity decree's purported award of custody to the wife, it "is of no binding force" due to procedural irregularities including the failure to make the husband a party and to notify him of the custody claim in the paternity case. Appellant's App'x at 330-31. The dissolution decree also separately addressed and granted custody of this fourth child to the husband, addressing the best interests of the child and concluding that "[t]he evidence before the Court is compelling and is such that the presumption favoring an award of custody of [the child] to Wife, is overcome and that it would be in [the child]'s best interest that [the child] be placed in the custody of Husband." *Id.* at 333. This child was more than five years of age at the time of the final dissolution decree.

In her appeal from the judgment of the dissolution court, the wife claims error in the following: (1) the failure of the Adams Circuit Court to recognize and follow the Wells Circuit Court paternity judgment; (2) the award of custody to a non-parent third party; (3) the denial of her Trial Rule 53.1 request to withdraw submission from the judge; and (4) the fundamental unfairness of the final dissolution hearing and the resulting custody decisions as a violation of her due process rights. The Court of Appeals addressed and rejected the last two of these claims. Declining to review these two issues on transfer, we summarily affirm these determinations. Ind. Appellate Rule 58(A).

## 1. Effect of Paternity Judgment in Dissolution Proceeding

To support her contention that the dissolution court improperly failed to recognize and follow the judgment of the paternity court, the wife argues that: (a) the Adams Circuit Court

lacked authority to reject the Wells Circuit Court paternity judgment in favor it its own custody order; (b) the Adams Circuit Court dissolution action lacked personal jurisdiction as to the child who is the subject of this custody dispute; and (c) the wife, as the biological mother of a child born out of wedlock, has a statutory right to sole legal custody.

*(a) Authority of Dissolution Court to Determine Custody*

Urging that the Adams Circuit Court, in adjudicating the parties' dissolution proceeding, lacked the legal authority to reject the custody determination included in the paternity judgment of the Wells Circuit Court, the wife argues that the dissolution court could not "refuse to honor a judgment otherwise valid on its face issued by another Circuit court of this state." Appellant's Br. at 26. She urges that the final paternity judgment and its award of custody cannot be invalidated by the dissolution decree.

The determinative issue, however, is not whether the dissolution court failed to honor a judgment of a sister court, but whether the paternity court was authorized to adjudicate a custody issue that was already pending before another court. Because the subject of child custody was first properly before the Adams Circuit Court in the dissolution proceeding, we conclude that the Wells Circuit Court was precluded from making a custody determination regarding the same child in the subsequently filed paternity action. Indiana Code § 33-28-1-6 declares: "When the subject matter of a circuit court is situated in two (2) or more counties, the court that takes cognizance of the matter first shall retain the matter." The applicable principles are stated in In re paternity of Fox, 514 N.E.2d 638 (Ind. Ct. App. 1987), *trans. denied*:

> It is well settled that two courts of concurrent jurisdiction cannot deal with the same subject matter at the same time. Once jurisdiction over the parties and the subject matter has been secured, it is retained to the exclusion of other courts of equal competence until the case is resolved, and the rule applies where the subject matter before the separate courts is the same, but the actions are in different forms. Exclusive jurisdiction over a particular cause of action vests when the complaint or other equivalent pleading or document is filed.

514 N.E.2d at 641 (internal citations omitted).

Among the legislature's purposes for dissolution proceedings is to provide for child

custody. I.C. § 31-15-1-2(3). The determination of child custody may be sought in an action for dissolution, for legal separation, for child support, or by "a person other than a parent by filing a petition seeking a determination of custody of the child," I.C. § 31-17-2-3(2), or in conjunction with a paternity determination, I.C. § 31-14-10-1.

The husband's petition for dissolution of marriage, filed in the Adams Circuit Court on April 21, 2005, asserted that there were four unemancipated children born of the marriage, naming each of the children, and expressly sought "an appropriate provision be made with respect to the custody and support" of these children. Appellant's App'x at 12. Likewise, the wife's June 7, 2005 counter-petition for dissolution of marriage identified the same four children as "born to this marriage." *Id.* at 35. Each party filed a motion for provisional order requesting custody of the children, *id.* at 13, 37, and following a contested hearing, the trial court awarded temporary custody of all four children to the husband. The wife thereafter filed a separate paternity action in Wells Circuit Court as to one of the children, bringing the action as mother and next friend of the child. Prosecuting it to conclusion during the pendency of the dissolution action, the wife obtained a paternity judgment finding that another man was the biological father of the child, limiting his visitation rights, and awarding her custody of the child. The wife then notified the dissolution court of the paternity action, filing a motion to dismiss the subject child from the dissolution case, and attaching a copy of the paternity judgment. The dissolution court took the wife's motion under advisement and proceeded to a contested final hearing and thereafter entered the final dissolution decree.

The subject matter of child custody of all four children was unquestionably before the dissolution court from the inception of the action. The wife could have, but did not, seek a determination in the dissolution proceeding that the husband was not the biological father of the child. Russell v. Russell, 682 N.E.2d 513, 518 (Ind. 1997). The wife's subsequent prosecution of a separate paternity action in the Wells Circuit Court could not, and did not, operate to interrupt or supercede the authority of the dissolution court to determine the custody of all four children, including the child who became the subject of the paternity action. The Adams Circuit Court was entitled to complete its handling of the previously filed dissolution action, including its determination of custody of all four children, and did not err in failing to give effect to the

5

intervening Wells Circuit Court paternity judgment.

*(b) Personal Jurisdiction of Children of the Marriage*

The wife contends that the dissolution court lacked personal jurisdiction over the child of which the husband was not the biological parent. We held in Russell that a dissolution court does not have jurisdiction to enter a custody order regarding children born during a marriage but whose biological father was not the husband. 682 N.E.2d at 517. But Russell also emphasized that, in contrast to cases where "the issue of whether a child is a child of the marriage may be vigorously contested," there are many cases in which "the parties to the dissolution will stipulate or otherwise explicitly or implicitly agree that the child is a child of the marriage." *Id.* at 518. In such cases, the determination that a child is a child of the marriage "is the legal equivalent of a paternity determination in the sense that the parties to the dissolution – the divorcing husband and wife – will be precluded from challenging that determination, except in extraordinary circumstances," but it will not preclude the child from separately seeking a paternity determination. *Id.*

Substantial similarities to the explicit or implicit agreement mentioned in Russell are found in the present dissolution case, where both parties' dissolution petitions expressly declared that all four children were born of the marriage and both sought custody and child support of these children in the dissolution proceeding. But even if the wife's subsequent separate paternity action and her belated challenges to the dissolution court's authority to determine custody of one child might arguably be characterized as vigorously contesting whether the child was a child of the marriage pursuant to Russell, such argument would not preclude the dissolution court's ultimate custody determination in this case. While Russell imposed limits on a dissolution court's power to consider such a child as a child of the marriage, Russell did not involve a non-biological "father's" request for custody predicated on the child's best interest, as permitted in In re the guardianship of B.H. and S.H., 770 N.E.2d 283, 287 (Ind. 2002). In the present case, such a determination was actually the ultimate basis for the court's decision to award the husband custody of the child he did not father. Because of this independent basis for the custody award, as explored in Part 2 below, further evaluation of the applicability of Russell to the present case

6

is not warranted.

*(c) Automatic Custody as Mother of Child Born Out of Wedlock*

As a third basis for claiming custody, the wife asserts that the child not fathered by the husband is to be considered an out-of-wedlock child, thereby entitling her to sole legal custody pursuant to statute. Citing Matter of Paternity of B.W.M., 826 N.E.2d 706 (Ind. Ct. App. 2005) and K.S. v. R.S., 669 N.E.2d 399, 402 (Ind. 1996), she contends that, where both a wife and husband know that a child being born to the wife is not the husband's child, such child is deemed to be a child born out of wedlock, and that I.C. § 31-14-13-1 requires that "a biological mother is to have sole legal custody of a child born out of wedlock." Appellant's Br. at 27.

As provided in the statute, this general statement is expressly subject to several exceptions:

> A biological mother of a child born out of wedlock has sole legal custody of the child, unless a statute or court order provide otherwise under the following:
>> (1)   IC 12-26 (involuntary commitment of a child).
>> (2)   IC 29-3 (guardianship and protective proceedings under the probate code).
>> *(3)   IC 31-14 (custody of a child born outside of a marriage).*
>> (4)   IC 31-34 (child in need of services).
>> (5)   IC 31-37 (delinquent child).
>> (6)   IC 35-46 (offenses against the family).
>> (7)   IC 35-50 (criminal sentences).
>> *(8)   An order by a court that has jurisdiction over the child.*

I.C. § 31-14-13-1 (emphasis added). Exceptions (3) and (8) appear applicable to the dissolution proceedings in the present case. Either the dissolution court is considering the award of custody of a child born outside the marriage, as under Russell, or, if not, then it was a court that had jurisdiction over the child. Thus the statutory assignment of the presumptive custody to the mother of a child born out of wedlock does not compel an award of custody to the wife in this case.

We therefore reject the wife's contention that the dissolution court improperly failed to recognize and follow the judgment of the paternity court. In the dissolution proceeding, the wife affirmatively applied to the Adams Circuit Court for temporary and permanent custody and child

support as to all four children born during the parties' marriage, and she did not raise any issue of paternity until one week before the scheduled final dissolution hearing. The issue of child custody was clearly before the dissolution court before the commencement of the paternity action, and the Adams Circuit Court was entitled to complete its handling of the previously filed dissolution action, including the determination of custody of all four children. It did not err in failing to give effect to the intervening Wells Circuit Court paternity and custody judgment. The dissolution court's authority to determine custody of all four children, including the child born out of wedlock, is not impaired by the statutory general presumption of sole custody for the biological mother. And even if the wife were to be considered sole custodian of the child by reason of the paternity judgment or the operation of statute regarding an out-of-wedlock child, the dissolution court in this case would be authorized to consider whether to make a superceding award of child custody to the husband as a non-biological parent of this child.

## 2. Sufficiency of Evidence for Award of Custody to a Non-parent Third Party

A child custody proceeding may be brought by a parent or by a person other than a parent. I.C. § 31-17-2-3. In awarding the husband custody of all four children, the dissolution court separately awarded him custody of the three children born of both the husband and wife. As to the fourth child, after noting the paternity court's determination that the child's father was a man other than the husband, the dissolution court concluded that "[t]he evidence before the Court is compelling and is such that the presumption favoring an award of custody of [the child] to Wife, is overcome and that it would be in [the child]'s best interest that [the child] be placed in the custody of Husband." Appellant's App'x at 333. The wife contends that that evidence was insufficient to support the trial court's award of custody to the husband, "a non-parent third party," rather than to the wife, as the child's biological mother. Appellant's Br. at 36.

To support her claim of insufficient evidence, the wife primarily asserts that there was no evidence that she "was unfit, unemployed, unstable, or was in any manner possessed of any personal behaviors or attributes, mental or physical, that were detrimental to the well being of [the child]," nor any evidence that she was "subject to any medical, physical, or emotional disabilities, characteristics, or addictions which would prevent her from being able to have the

8

care, custody, and control" of the child. Appellant's Br. at 42. In addition, relying largely on her own testimony and the dissolution court's provisional order proceedings, the wife refers to evidence reflecting unfavorably on the husband as custodian of the child. She argues that the husband was "[t]he only parent who possessed negatives." *Id.* at 47. Claiming Guardianship of B.H. as authority, the wife asserts that concern for the interest of the child should not "be invoked or in force against a person under no disabilities, unless he has forfeited his right by misconduct or lost it by voluntary relinquishment or by long acquiescence in the care and custody of his child by another." Appellant's Br. at 44.

This language does appear in Guardianship of B.H., 770 N.E.2d 283, 285, but only with disapproval. It is part of a passage quoted from Gilmore v. Kitson, 165 Ind. 402, 406, 74 N.E. 1083, 1084 (1905), which we describe as representing "elevated concerns for the natural parents," which more recent cases had given "diminished weight" in favor of emphasizing the welfare and best interests of the involved child. Guardianship of B.H., 770 N.E.2d at 286. After reviewing the approaches used in several cases in more recent years, we observed that in considering a request for child custody by a non-parent, a trial court must consider "the important and strong presumption that the child's best interests are ordinarily served by placement in the custody of the natural parent." *Id.* at 287. Not only does this presumption provide a measure of protection for the rights of the natural parent, but "more importantly, it embodies innumerable social, psychological, cultural, and biological considerations that significantly benefit the child and serve the child's best interests." *Id.* We then concluded:

> To resolve the dispute in the caselaw regarding the nature and quantum of evidence required to overcome this presumption, we hold that, before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than a natural parent represents a substantial and significant advantage to the child. The presumption will not be overcome merely because "a third party could provide the better things in life for the child." In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course, be important, but the trial court is not limited to those criteria. The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence that the child's best interests are substantially and significantly served by placement with another person.

9

*Id.* (internal citations omitted).

As explained in <u>Guardianship of B.H.</u>, an appellate court should not disturb a trial court determination awarding child custody to a non-parent unless "there is no evidence supporting the findings or the findings fail to support the judgment." 770 N.E.2d at 287. The reviewing court does not reweigh the evidence, but considers only the evidence favorable to the trial court's judgment. *Id.* at 288. A challenger must show that the trial court's findings are clearly erroneous. *Id.* Moreover, in the review of a non-parent custody award, which requires clear and convincing evidence:

> [A]n appellate court may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence.

*Id.* (internal citations omitted).

Although not requested by either party, the trial court did make a number of written factual findings. Those with respect to the custody of the subject child included the following:

10. The parties and their three (3) children, and the paternal and maternal families, have always treated [the child] as though Husband was her biological father, and her treatment was no different, in any respect, than the other children.

12. During the marriage the parties, children, and their extended families lived and worked in Adams and Wells County, Indiana. The children have always attended school in the North Adams School District.

13. If Wife were awarded custody of [the child], she would take [the child] to live with her in Louisiana, uprooting and removing her from the life-long environment she has known and become accustomed to, removing her from a close relationship with her maternal grandmother and uncle, paternal grandparents, aunts and uncles, and fifteen (15) maternal and paternal grandchildren, with whom [the child] has had a close and loving relationship. She would be taken to a place, so far away, that customary and normal visitation with all these family members would, as a practical matter, be impossible. She would be in an environment where she would know no one except her mother and her boyfriend. Presumably, Wife and her boyfriend will be employed and [the child] will be cared for by strangers. The move to Louisiana would be detrimental to the emotional health and welfare of [the child].

15.     It is obvious that Wife is willing to put her own interests ahead of [the child's] and the other children, even if it means not having custody of them.

16.     The loving and caring relationship and bond that has been developed between Husband and [the child], since the time of her birth, is such that to sever it at this time would be emotionally harmful and detrimental to [the child's] future happiness and emotional welfare.

17.     As confirmed by several adult witnesses, including Wife's mother, [the child], as with all children, needs stability and continuity in her life, particularly at this stressful time, and moving her to Louisiana would not provide her with the stability and continuity she needs. Placing [the child] in Husband's custody would provide her with the stability and continuity she needs and deserves.

18.     If [the child] is placed in Husband's custody, her life and her environment would not be disrupted, she would continue to enjoy the love and companionship, guidance and care of Husband (the only "father" she has ever known), her siblings and her entire maternal and paternal families.

19.     With respect to custody of [the child], the court has considered all relevant factors, and specifically those enumerated in I.C. 31-17-2-8[1] and I.C. 31-17-2-8.5.[2] The evidence before the court is compelling and is such that the

[1] Stating that a "court shall determine custody and enter a custody order in accordance with the best interests of the child," this statute enumerates the following factors to be considered:
    (1) The age and sex of the child.
    (2) The wishes of the child's parent or parents.
    (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
    (4) The interaction and interrelationship of the child with:
        (A) the child's parent or parents;
        (B) the child's sibling; and
        (C) any other person who may significantly affect the child's best interests.
    (5) The child's adjustment to the child's:
        (A) home;
        (B) school; and
        (C) community.
    (6) The mental and physical health of all individuals involved.
    (7) Evidence of a pattern of domestic or family violence by either parent.
    (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.
I.C. § 31-17-2-8.
[2] This statute lists the following four additional factors for consideration in determining custody "if the court finds by clear and convincing evidence that the child has been cared for by a de facto custodian":
    (1) The wishes of the child's de facto custodian.
    (2) The extent to which the child has been cared for, nurtured, and supported by the de facto custodian.
    (3) The intent of the child's parent in placing the child with the de facto custodian.
    (4) The circumstances under which the child was allowed to remain in the custody of the de

> presumption favoring an award of custody of [the child] to Wife, is overcome and it would be in [the child's] best interest that she be placed in the custody of Husband.

Appellant's App'x at 319-21.

Considering, as we must, the evidence favorable to the judgment, the findings are supported by the evidence. During the marriage, the husband was at home in the evenings and spent time helping the children with their homework. He prepared meals and shared doing the laundry and shopping with the wife. And during the almost one year period following the provisional order granting him custody, the husband was primary caretaker for all four children. The husband fully accepted the subject child as his own child, and treated all four children equally. He regularly made several trips to school each day to facilitate the children's participation in extra-curricular activities. There was substantial testimony regarding the close relationship between the four children and the extended family nearby, including the wife's mother, the husband's parents, a sister, and nieces and nephews. The wife's mother testified: "I can't say this parent is better than this parent. I just know that what they need is stability in their life, and right now that's what they're getting by being with their father." Tr. at 95. Several witnesses testified about the wife's plans to move with the subject child to Louisiana, and how this move would negatively impact the child's stability and family relationships. We also note that the trial court interviewed the children in chambers.

In addition to claiming insufficient evidence to prove her unfitness, the wife asserts the evidence demonstrated that the husband was critical and hostile toward her, that he was physically abusive to her on an occasion approximately five years earlier, and that he frequently

---

facto custodian, including whether the child was placed with the de facto custodian to allow the parent seeking custody to:
    (A) seek employment;
    (B) work; or
    (C) attend school.
(c) If a court determines that a child is in the custody of a de facto custodian, the court shall make the de facto custodian a party to the proceeding.
(d) The court shall award custody of the child to the child's de facto custodian if the court determines that it is in the best interests of the child.
(e) If the court awards custody of the child to the child's de facto custodian, the de facto custodian is considered to have legal custody of the child under Indiana law.
I.C. § 31-14-13-2.5.

left the children home alone. The wife disputes the trial court's evaluation of the significance of her move to Louisiana, and points out the absence of any professional testimony that such move would be detrimental to the child's emotional health. She also disagrees with the trial court's finding that she is willing to place her own interests ahead of those of the child, claiming instead that none of the children ever suffered as a result of her conduct.

The wife's contentions essentially seek an appellate reweighing of the evidence, which we cannot do. Guardianship of B.H., 770 N.E.2d at 288. Only the evidence favorable to the judgment may be considered. *Id.* The wife has not established a complete absence of evidence to support the findings nor that the findings fail to support the judgment. *Id.* at 289. A reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence. *Id.* at 288. We must therefore decline the wife's claim that the evidence was insufficient to support the trial court's award of custody of the subject child to the husband, who is not the child's biological father.

The wife also briefly quarrels with the dissolution court's conclusion that the husband "is and has been, a de facto custodian of [the child]." Appellant's App'x at 319. She argues that the dissolution court incorrectly relies solely upon the husband's sole custody during the approximately one year during which the dissolution case was pending, which period is expressly excluded from the statutory definition of "de facto." I.C. § 31-9-2-35.5. Because the wife does not assert any appellate claim that such de facto status is a necessary prerequisite to the custody award to the husband, the correctness of the trial court's finding of de facto status is not a determinative issue.[3]

---

[3] Although not raised by the wife, there is an unresolved issue regarding whether "de facto custodian" status is a necessary prerequisite in a dissolution proceeding to a spouse receiving custody of a child for whom the spouse is not the biological parent. Several non-dissolution cases have held that a party who is not a natural parent need not allege or claim status as a de facto custodian in order to pursue custody. Allen v. Proksch, 832 N.E.2d 1080 (Ind. Ct. App. 2005) *trans. not sought*; In re the Custody of G.J., 796 N.E.2d 756, 761 (Ind. Ct. App. 2003), *trans. denied; see also* Nunn v. Nunn, 791 N.E.2d 779, 784-85 (Ind. Ct. App. 2003) *trans. not sought.* In dicta, however, the Court of Appeals in Custody of G.J. suggested that in a dissolution proceeding, the award custody of a child to a non-biological parent may be restricted only to a person who qualifies as a de facto custodian. Custody of G.J., 796 N.E.2d at 762. This conclusion is not expressly stated in the language of the de facto custody statutes, which define the term "de facto" and designate additional factors to be considered when considering a claim for custody by a de facto custodian. These statutes provide:

We conclude that the evidence was not insufficient to support the trial court's award of custody to the husband, "a non-parent third party," rather than to the wife, as the child's biological mother.

## Conclusion

Having previously granted transfer, we summarily affirm the Court of Appeals determination of the wife's appellate allegations of improper denial of her Trial Rule 53.1 request and of fundamental unfairness and violation of due process. Finding that the dissolution court was authorized to determine the custody of all four children of the parties' marriage, including the child whose paternity was separately found to be in a man other than the husband, and that the wife has failed to establish that evidence failed to support the findings and judgment of the dissolution court, we affirm the dissolution and custody judgment of the Adams Circuit Court.

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.

---

**31-9-2-35.5. De facto custodian.**
"De facto custodian", for purposes of IC 31-14-13, IC 31-17-2, and IC 31-34-4, means a person who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least:
  (1) six (6) months if the child is less than three (3) years of age; or
  (2) one (1) year if the child is at least three (3) years of age.
  Any period after a child custody proceeding has been commenced may not be included in determining whether the child has resided with the person for the required minimum period. The term does not include a person providing care for a child in a foster family home.
The statutory additional factors for consideration in determining custody for a child cared for by a de facto custodian are set out in note 2 above.