**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JASON SPINDLER**
Spindler Law
Princeton, Indiana

ATTORNEY FOR APPELLEES:

**MICHAEL R. COCHREN**
Princeton, Indiana

FILED
Apr 04 2013, 9:30 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| R.D, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 26A01-1208-JP-372 |
| | ) | |
| A.W. & M.W., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE GIBSON CIRCUIT COURT
The Honorable Jeffrey Meade, Judge
Cause No. 26C01-1111-JP-60

April 4, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

R.D. ("Father") appeals the trial court's award of custody of A.W. ("Child") to An.W. and M.W. ("Step-Grandparents"). Father raises one restated issue on appeal: whether the trial court erred in awarding custody to the Step-Grandparents. Concluding that the trial court did not err, we affirm.

## Facts and Procedural History

The Child was born on February 23, 2011. At the time of conception, D.P.W. ("Mother") was married to R.W. ("Husband"), but had left Husband briefly and entered into a relationship with Father. After becoming pregnant, Mother ended the relationship with Father, returned to Husband, and, before giving birth, moved to Texas. The Texas Department of Child Services became involved, and the Child was placed with Husband's parents, the Step-Grandparents, here in Indiana on June 15, 2011. A half-sibling to the Child was placed with the Step-Grandparents at the same time; the Step-Grandparents already had guardianship over another of the Child's half-siblings.[1]

It appears that, after Mother moved to Texas, Father attempted to track her and the Child down via family members and calls to authorities in Texas, but was unsuccessful. At some point, Mother moved back to Indiana. Eventually, Father learned that the Child and Mother were in Indiana, and soon thereafter, on November 10, 2011, filed a petition to establish paternity. The court ordered DNA testing, and set the matter for a hearing. Paternity was established and a hearing was held on January 10, 2012. The parties agreed that child support would be waived and Father would have supervised visitation time with the

2

Child, and the court appointed a guardian ad litem ("GAL") for the Child. That same day, the Step-Grandparents filed for custody of the Child.

On April 4, 2012, Father filed for custody of the Child. A trial was held on the custody dispute over two days, July 9 and 10, 2012. Following trial, the trial court entered an order with findings of facts and conclusions of law. The court concluded that the Step-Grandparents were de facto custodians of the Child, that they had overcome the presumption in favor of awarding custody to the natural parent by clear and convincing evidence, and that it was in the Child's best interest for the Step-Grandparents to have physical and legal custody of her. The court granted Father supervised visitation with the Child, and left open the possibility of future modifications allowing for increased visitation if Father underwent a psychiatric evaluation, cooperated with the evaluation, and followed all resulting recommendations. This appeal followed.

## Discussion and Decision

### I. Standard of Review

We review a determination awarding child custody to a non-parent for clear error. In re Marriage of Huss, 888 N.E.2d 1238, 1245 (Ind. 2008). We will not disturb the trial court's determination unless there is no evidence supporting the findings, or unless the findings do not support the judgment. Id. We do not reweigh the evidence, and we consider only the evidence favorable to the trial court's judgment. Id. An award of custody to a non-parent requires clear and convincing evidence, and an appellate court

---

[1] The two half-siblings are the children of Mother and Husband.

3

may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence.

Id. (citation omitted).

## II. De Facto Custodians

In awarding child custody to a non-parent, the first step a court must take is to determine whether the non-parent may be considered a de facto custodian, as defined by Indiana Code section 31-9-2-35.5. See In re Guardianship of L.L., 745 N.E.2d 222, 229 (Ind. Ct. App. 2001), trans. denied. If the non-parent is found to be a de facto custodian, then the non-parent will be made a party to the custody proceedings. Ind. Code § 31-14-13-2.5(c). For a child under three years of age, a de facto custodian is "a person who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least" six months. Ind. Code § 31-9-2-35.5. "Any period after a child custody proceeding has been commenced may not be included in determining whether the child has resided with the person for the required minimum period." Id.

In the current case, the Child lived with and was supported by the Step-Grandparents for more than six months before the Step-Grandparents filed for custody on January 10, 2012. Father does not argue that the Step-Grandparents cared for the Child for less than six months, or that the Step-Grandparents were not the primary caregivers or financial support for the Child during that time. Father contends, however, that the clock should toll on the six month requirement once Father filed for paternity, because Father could not seek custody

4

until paternity was determined, and could not petition to establish paternity until he located Mother and Child, and further that Father made reasonable efforts to locate Mother and establish paternity. Father cites no authority to support this position, nor are we aware of any. It seems clear that if the legislature had wanted to exclude from the determination of de facto custodian status any time after a paternity action was filed, it could easily have done so. Instead, the statute excludes time after a custody proceeding has been commenced. The Step-Grandparents further observe that the structure of the statute itself indicates the legislature considered the possibility that de facto custodianship could be established before paternity was established, as de facto custodians are considered in a family law chapter titled "Custody Following Determination of Paternity." Ind. Code § 31-14-13.

In essence, Father asks us to rewrite the law to provide for tolling of the relevant time period once at petition for paternity, rather than custody, is filed. We are unable to do so. We agree with the trial court's determination that the Step-Grandparents were de facto custodians of the Child. We also note that a determination that a person is a de facto custodian only allows that person to be a party to the case. It in no way guarantees that he or she will be awarded custody. To gain custody, that person must additionally rebut the presumption in favor of awarding custody to the natural parent, and the court must determine that it is in the child's best interest to award that person custody, as discussed below.

III. Presumption in Favor of Natural Parent

We have noted that "[i]t is well established that when a parent initiates an action to obtain custody, a nonparent seeking to retain custody must bear the burden of overcoming the

5

parent's presumptively superior right to custody." L.L., 745 N.E.2d at 227. The presumption must be rebutted by clear and convincing evidence. Id. at 230. Evidence rebutting the presumption may, but need not necessarily, include the "parent's present unfitness, or past abandonment of the child such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child." Id. at 230-31. A general finding that it would be in the child's best interest to be placed in the nonparent's custody is insufficient to rebut the presumption. Id. at 231. However, as discussed below, if the presumption is rebutted, then the court must further engage in a "best interests" analysis. Id.

The trial court here did not explicitly state that the evidence rebutting the presumption went to Father's present unfitness, although that seems to be the implication. We conclude that the record supports the findings of the court, and those findings support the judgment that the presumption was rebutted by clear and convincing evidence. Father argues that there was no evidence that he abandoned the Child, and Step-Grandparents do not contend that he did. Father also argues that there was no evidence presented that he was unfit. We disagree with Father, and agree with Step-Grandparents that sufficient evidence was presented to allow a reasonable trier of fact to conclude that Father's unfitness was established by clear and convincing evidence.

The GAL submitted a lengthy report detailing her review of Father's medical records, her inspection of both Father's and Step-Grandparents' homes, her observation of some of Father's visits with the Child as well as Step-Grandparents' interactions with the Child, and

6

her interviews of other family members and friends. She additionally performed background and criminal history checks on both parties. She concluded that Father has a worrisome mental health history, and was concerned about Father's ability to parent based on not only his history but her observation of him, and that he had unrealistic expectations of what a child requires. She also concluded that the Step-Grandparents provide good care for the Child and the Child's half-siblings, and she had no concerns about the Step-Grandparents. She recommended that the Step-Grandparents be awarded custody of the Child, that Father continue supervised visits, and that Father undergo a psychiatric evaluation.

The record shows that Father has had mental illness since childhood. His history includes multiple suicide attempts, hallucinations, voluntary and involuntary inpatient admissions to mental health facilities, threats to take others with him when he commits suicide, and references to wanting to kill other people. He has taken medication, including lithium, for his illnesses in the past, but is not currently taking medication or in counseling. The court found that Father does not recognize the gravity or extent of his mental health condition. While we are not suggesting that a history of even serious mental health issues would automatically render a parent unfit, where, as here, the issues appear to be unacknowledged and unresolved, the trial court was right to find that Father's illness would put the Child at risk both physically and emotionally. Further, the record also shows that Father's interactions with the Child indicate someone who does not have realistic expectations of what would be involved with being a full-time single parent. We conclude

7

that the trial court did not err when it determined that the Step-Grandparents had, by clear and convincing evidence, overcome the presumption in favor of awarding custody to Father.

## IV. Best Interests of the Child

Finally, having overcome the presumption in favor of the natural parent, the final hurdle for nonparents is a "best interests" analysis. L.L., 745 N.E.2d at 231. Indiana Code details considerations relevant to the case at hand. Factors include the interaction of the child with the parents and siblings, the child's adjustment to home, and the mental and physical health of all individuals involved, among other considerations. Ind. Code § 31-14-13-2. Additionally, where a de facto custodian is involved, the court shall consider the wishes of the custodian, and the extent to which the custodian has cared for and nurtured the child, among other considerations. Ind. Code § 31-14-13-2.5.

Here, in addition to the evidence of Father's unfitness as outlined above, the record shows that the Step-Grandparents have provided the Child with a safe and appropriate home, that their interactions with her are good and reasonable, that they are also caring for the Child's two half-siblings, and that a strong emotional bond has formed between the Child and the Step-Grandparents as well as between the Child and her half-siblings.

Father's main argument against placement with the Step-Grandparents being in the Child's best interest is that the Step-Grandparents have history with the Indiana Department of Child Services ("DCS"). While the GAL did not find any DCS records relating to the Step-Grandparents, although she did find at least one record relating to Father, the Step-Grandmother testified at trial that years ago there had been an issue with two of their adopted

8

children. It was not clear whether DCS officially became involved. It appears from the record that the Step-Grandparents had adopted at least two children, in addition to having natural born children, and it was implied that the adopted children at issue were older when they were adopted and had some problems. At one point, the female child accused the male child of molesting her. The record indicates that it was Step-Grandmother herself who reported this in an effort to get counseling and figure out what to do next. She made sure that the children were never alone together until the issue was resolved, going so far as to have the male child sleep at Step-Grandmother's mother's house every night in the interim, so that he would not be in the same house as the female child. Eventually, it seems that the situation was resolved and the female child recanted; further, it seems that the female child had a history of somewhat shocking untruthfulness in attempts to get attention. Nonetheless, Step-Grandmother testified that the male child, now an adult, would not be allowed to be around the Child alone, out of an abundance of caution.

Given the whole of Step-Grandparents' interactions with and care of the Child, Father's mental health issues, and Father's unrealistic expectations of parenting, we conclude that the trial court did not err in determining that the Child's best interests would be served by placing her in the custody of Step-Grandparents.

## Conclusion

Concluding that the trial court correctly determined that the Step-Grandparents were de facto custodians, and that the evidence supports the findings and the findings support the judgment, we affirm.

9

Affirmed.

KIRSCH, J., and VAIDIK, J., concur