# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ROBERT E. SHIVE**
Hollingsworth & Zivitz, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEE:

**JOHN S. CAPPER, IV**
Capper Tulley & Reimondo
Crawfordsville, Indiana

FILED

May 22 2014, 10:37 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE PATERNITY OF B.C., | ) ) ) | |
| M.B. and N.S., | ) ) | |
| Appellants, | ) ) | |
| vs. | ) ) | No. 54A01-1309-JP-398 |
| J.C., | ) ) ) | |
| Appellee. | ) | |

APPEAL FROM THE MONTGOMERY CIRCUIT COURT
The Honorable Harry A. Siamas, Judge
Cause No. 54C01-1212-JP-319

**May 22, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

M.B. and N.S. appeal the Montgomery Circuit Court's denial of their motion to correct error following an order on custody and parenting time in a paternity action filed by J.C., and the Marion Superior Court's denial of their motions to correct error following the dismissal of their guardianship and adoption action. M.B. and N.S. raise three issues which we consolidate and restate as whether the Montgomery Circuit Court or the Marion Superior Court had jurisdiction to determine the custody of B.C. We reverse and remand.

FACTS AND PROCEDURAL HISTORY

B.C. was born on August 25, 2010. On March 5, 2012, M.B. and his significant other N.S. (collectively, the "Guardians"), then caregivers of B.C., filed a Verified Petition for Appointment of Guardianship over B.C. in the Marion Superior Court, Probate Division, under cause number 49D08-1203-GU-8868.[1] The Guardians alleged that M.B. was B.C.'s maternal grandfather, that there was no father listed on the child's birth certificate, and that the Guardians did not know the identity of B.C.'s biological father.[2] The Guardians also alleged that Mother had a history of arrests, that Mother had signed a temporary guardianship agreement, and that B.C. had resided with the Guardians for the majority of his life after having been left in their care by the mother. On July 31, 2012, the Marion Superior Court, Probate Division, approved an agreed entry on guardianship which appointed M.B. and N.S. as guardians over B.C.

---

[1] The Guardians' petition referred to B.C. as B.B. which corresponds to the initials of his name on his birth certificate. On appeal, both parties use the initials B.C. to refer to the child.

[2] The Guardians alleged that M.B. was the "paternal grandfather" and that they did not know "who the biological father of the minor child is." Appellant's Appendix at 16-17. Further, the Child Guardian Consent Form signed by B.C.'s mother and M.B. reveals that the mother and M.B. share the same last name. Based upon the petition and the Child Guardian Consent Form, we conclude that the Guardians were attempting to allege that M.B. was the maternal grandfather.

On December 19, 2012, J.C. filed a Verified Petition to Establish Paternity, Custody, Support, and Parenting Time in the Montgomery Circuit Court. The chronological case summary indicates that the case was pending on the juvenile docket of the Montgomery Circuit Court. On December 20, 2012, the Montgomery Circuit Court approved an agreed paternity order submitted by J.C. and B.C.'s mother, A.C. ("Mother"), finding that J.C. was the biological father of B.C.

On February 12, 2013, J.C. filed a Verified Motion to Dismiss the guardianship in the Marion Superior Court, Probate Division. J.C. alleged that the guardianship was no longer needed and that the Guardians had refused him any visitation or contact with B.C. and advised him that should he come to their property he would be arrested for trespass. On February 25, 2013, the Guardians filed a Verified Motion to Intervene, Set Aside the Agreed Paternity Order, and Request for DNA Testing in the Montgomery Circuit Court. The Guardians alleged that J.C. was not the biological father of B.C. and that "this matter might be better off with all issue [sic] combined before the Marion Superior Court Probate Division, as that is the appropriate county of residence of the minor child and has been in excess of six (6) months." Appellants' Appendix at 32.

On May 13, 2013, the Montgomery Circuit Court entered an order granting the Guardians' motion to intervene, denying their motion to set aside the paternity judgment, and denying their request for DNA testing.

On May 20, 2013, the Guardians filed a Verified Petition for Adoption in the Marion Superior Court, Probate Division, under cause number 49D08-1305-AD-23417.[3]

---

[3] The Guardians' petition for adoption was filed before the same trial court judge as the guardianship proceeding.

On June 13, 2013, J.C. filed a Petition to Establish Custody in the Montgomery Circuit Court. On June 20, 2013, the Guardians filed a Motion for Consolidation and Transfer to Marion Superior Court, Probate Division, in the Montgomery Circuit Court. The Guardians alleged that "this paternity action should be transferred and consolidated with the guardianship proceeding in the Marion County Superior Court, Probate Division, under Cause No. 49D08-1203-GU-008868." Id. at 48.

On June 21, 2013, J.C. filed an objection to the Guardians' motion for consolidation and transfer in the Montgomery Circuit Court. That same day, the Montgomery Circuit Court held a hearing. At the beginning, the court referred to the Guardians' motion for consolidation and transfer to Marion Superior Court, Probate Division, and asked the parties if there was anything else they wanted to address before it made a decision. The Guardians' attorney stated: "Our theory of course is, was that there's already subject matter jurisdiction with an order placing the care and custody of that child with [the Guardians] and an order from this court would create two orders to the same effect and that's why we have asked for the motion to be granted . . . ." Transcript at 4. After arguments by the parties in which the Guardians' attorney did not mention the adoption petition, the court stated:

> The statutes give the court direction and in looking at this [sic] two statutes [Ind. Code § 31-30-1-1] and companion statute [Ind. Code § 29-3-2-1] at least in this court's mind establishes that this court has jurisdiction over any custody issue and that that continues even in the face of another court having established a guardianship. The guardianship court decides a different issue than the juvenile court does. The juvenile court is concerned with custody, child support, parenting time, those types of issues involving a child. The guardianship court is not really determining issues of custody it determines whether or not a person needs to be protected because they're incapacitated and in this case the incapacity would be the minority of the

4

child and then whether that continues given the circumstances. Guardianships as everyone here knows can last for a month, six months or years depending on whether a person continues to have an incapacity that requires in each particular case for the guardian to, a guardian to continue to exercise the guardianship over the ward. So I, but I think it's clear from our statutes, statutory scheme that the juvenile court is not deprived by a guardianship court and specifically just the opposite and this court does have jurisdiction and continues to have jurisdiction over the matter so the court's going to deny the motion to consolidate and transfer. I don't think the guardianship court can exercise the juvenile jurisdiction and in any event that motion will be denied.

Id. at 7-8. After hearing evidence, including that the Guardians had filed a petition to adopt B.C.,[4] the court continued the hearing to July 2, 2013.

On July 2, 2013, during cross-examination, M.B. testified that he and N.S. had instituted adoption proceedings of B.C. The attempt to adopt B.C. was also mentioned during the questioning of D.G., B.C.'s maternal grandmother. Specifically, the following exchange occurred during the cross-examination of D.G.:

Q. Was it your fear and [M.B.'s] fear that if [Mother] or [J.C.] started visiting that they may connect with the child and the two of you, the two families are trying to keep the child away?

A. No.

Q. Well you know they're trying to adopt the child don't you?

---

[4] During the redirect examination of J.C. by J.C.'s counsel, the following exchange occurred:

Q. In fact while this has all been pending they just filed a petition to try to adopt this child didn't they?

A. Yes.

Q. They gave you notice.

A. Yes.

Transcript at 55.

5

A. Yes.

Q. And actually legally cut off all your rights too you know.

A. Legally yes.

Id. at 159. On redirect examination by the Guardians' counsel, the following exchange occurred:

Q. As [J.C.'s counsel] pointed out if the adoption that isn't before us today went through that would cut off your rights as grandmother is that correct?

A. I'm not aware of what the legalities are.

Id. at 160.

On July 3, 2013, J.C. filed an Objection to Petition for Adoption and Motion to Dismiss Adoption in the Marion Superior Court. On July 5, 2013, the Montgomery Circuit Court entered an order finding by clear and convincing evidence that the Guardians should retain physical custody of B.C. at the time, that J.C. and M.B. share joint legal custody of B.C., that J.C. should have parenting time with B.C., and that Mother, who had been incarcerated since February 2013, should have parenting time upon her release from incarceration. In August 2013, the Guardians filed a motion to correct error in the Montgomery Circuit Court, which the court later denied.[5]

On July 22, 2013, the Guardians filed a brief on the issue of jurisdiction in the Marion Superior Court under the guardianship cause number and argued that the Montgomery Circuit Court should have relinquished jurisdiction upon the Guardians' motion or, if not then, upon the filing of the Petition for Adoption, both of which

---

[5] The record does not contain a copy of the motion to correct error.

6

occurred before any final order was entered in Montgomery Circuit Court as to the custody of B.C. J.C. and the Guardian ad Litem ("GAL") also filed briefs that same day.

On July 25, 2013, the GAL filed a Motion to Consolidate Paternity and Guardianship Proceedings and Request to Send Montgomery Circuit Court File to Marion Superior Court, Probate Division, in the Marion Superior Court. The GAL requested that the Marion Superior Court consolidate the paternity action with the guardianship action because the Marion Probate Court took initial cognizance of the matter of the custody of B.C. and because J.C. agreed to submit himself to the Marion Probate Court's jurisdiction.

On August 6, 2013, the Marion Superior Court, Probate Division, granted J.C.'s motion to dismiss and ordered that the guardianship of B.C. be dismissed. That same day, the Marion Superior Court, Probate Division, dismissed the verified petition for adoption. In August 2013, the Guardians filed a motion to correct error in the Marion Superior Court, Probate Division, which the court later denied on September 24, 2013.[6]

The Guardians filed notices of appeal from the paternity order in Montgomery Circuit Court and the guardianship and adoption orders in the Marion Superior Court, and the appeals were consolidated.

### DISCUSSION

The issue is whether the Montgomery Circuit Court or the Marion Superior Court had jurisdiction to determine the custody of B.C. The Guardians cite Ind. Code § 31-19-2-14 for the proposition that the filing of the adoption petition requires all actions related

---

[6] The record does not contain a copy of the motion to correct error.

to the care and custody of B.C. to be transferred to the Marion Superior Court, Probate Division. The Guardians argue that given the establishment of proper venue and exclusive jurisdiction in the Marion Superior Court, Probate Division, the Montgomery Circuit Court should have relinquished jurisdiction upon their motion or, if not then, upon the filing of the petition for adoption, both of which occurred before any final order was entered in the Montgomery Circuit Court as to the custody of B.C. The Guardians also argue that even assuming that the Montgomery Circuit Court held exclusive jurisdiction over the paternity of B.C., then the order establishing J.C. as B.C.'s legal father would be proper but that would not necessarily vest jurisdiction over the issue of care and custody of B.C. in that court because the guardianship court remains first in time with an order in place. The Guardians assert that there are now two conflicting orders regarding custody and parenting time. The Guardians further claim that the Marion Superior Court erred in dismissing the adoption petition because it failed to hold a hearing pursuant to Ind. Code §§ 31-19-10-5 and -6. The Guardians also cite Ind. Code § 31-19-11-5 and maintain that the Marion Superior Court erred when it dismissed the adoption petition without determining who should have custody of B.C. The Guardians further assert that the Marion Superior Court erred in dismissing the guardianship without holding a hearing.

J.C. argues that the Montgomery Circuit Court properly retained its exclusive jurisdiction over the paternity proceeding. J.C. contends that the Marion Superior Court, Probate Division, could not have exclusive jurisdiction over the matter of the paternity and custody of B.C. because it was a probate court and not a juvenile court as required by Ind. Code § 31-30-1-1(3). J.C. also argues that the Guardians failed to notify the

8

Montgomery Circuit Court of the adoption proceedings and did not preserve their objection for appeal. J.C. also asserts that, even if the Guardians had properly preserved this matter at trial, Ind. Code § 31-19-2-14(a) is not strictly applicable to this situation where a paternity action was filed before the filing of an adoption action.

With respect to the dismissal of the adoption proceeding, J.C. notes that a hearing was held on his motion to contest adoption on July 8, 2013. J.C. also alleges that the Guardians never formally notified the Marion Superior Court of the statutory requirements of Ind. Code § 31-19-10-5. He contends that a full hearing was not necessary to determine custody of the minor child following the dismissal of the adoption proceeding and that a determination of who should have custody of B.C. was unnecessary because the Marion Superior Court in the adoption proceeding had been made aware of the order of the Montgomery Circuit Court. J.C. also argues that the guardianship proceeding was properly dismissed as neither detailed findings nor a hearing were necessary to terminate the proceeding.

In their reply brief, the Guardians argue that the assertion that the Montgomery Circuit Court was unaware of the adoption proceedings is not supported by the record and that the lack of subject matter jurisdiction is an issue that cannot be waived. The Guardians also argue that the Marion Superior Court was on notice of its jurisdiction over the adoption and should have granted the motion consolidating all outstanding cases under the adoption case. They again allege that no hearing occurred on July 8, 2013, and that counsel were merely called into the court's chambers for an "off-record attorney's conference" in which the court instructed counsel to submit briefs on the issue of

9

jurisdiction and motions to dismiss guardianship and petition for adoption. Appellants' Reply Brief at 5.

This case requires us to interpret the relevant statutory provisions addressing jurisdiction. When interpreting a statute, we independently review a statute's meaning and apply it to the facts of the case under review. Bolin v. Wingert, 764 N.E.2d 201, 204 (Ind. 2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. Id. A statute is unambiguous if it is not susceptible to more than one interpretation. Elmer Buchta Trucking, Inc. v. Stanley, 744 N.E.2d 939, 942 (Ind. 2001). If a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. Bolin, 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. Id. A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. Mayes v. Second Injury Fund, 888 N.E.2d 773, 776 (Ind. 2008).

We also observe that the question of a court's jurisdiction is a question of law, and we afford no deference to the trial court's conclusion. Reynolds v. Dewees, 797 N.E.2d 798, 800 (Ind. Ct. App. 2003). Rather, appellate courts independently evaluate issues of law. Id. To render a valid judgment, a court must have both subject matter jurisdiction and personal jurisdiction. Buckalew v. Buckalew, 754 N.E.2d 896, 898 (Ind. 2001). An Indiana court obtains subject matter jurisdiction only through the Indiana Constitution or a statute. Parkview Hosp., Inc. v. Geico Gen. Ins. Co., 977 N.E.2d 369, 372 (Ind. Ct.

10

App. 2012), trans. denied. The question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs. K.S. v. State, 849 N.E.2d 538, 542 (Ind. 2006) (citing Troxel v. Troxel, 737 N.E.2d 745, 749 (Ind. 2000), reh'g denied). When a court lacks subject matter jurisdiction, its actions are void ab initio and have no effect whatsoever. Troxel, 737 N.E.2d at 749.

We initially address whether the Marion Superior Court, Probate Division, had jurisdiction over the Guardians' March 5, 2012 petition for appointment of guardianship. Generally, all nonstandard superior courts have "original and concurrent jurisdiction in all civil cases . . . ." Ind. Code § 33-29-1.5-2(1). Ind. Code Title 29 governs probate, and Ind. Code § 29-3-2-1(a)(1) provides that Indiana courts having probate jurisdiction have jurisdiction over "[t]he business affairs, physical person, and property of every incapacitated person and minor residing in Indiana." Ind. Code § 29-3-2-1(b) sets out exceptions to the general rule that probate courts have jurisdiction over guardianship actions but these exceptions did not apply at the time the Guardians filed their petition or when the court entered its July 31, 2012 order because at the time that the Guardians filed their petition for guardianship on March 5, 2012, and at the time the Marion Superior Court, Probate Division, entered its July 31, 2012, order approving the agreed entry on guardianship, J.C. had not yet filed his verified petition to establish paternity.[7]

---

[7] Ind. Code § 29-3-2-1(b) provides: "Except as provided in subsections (c) through (e), the court has exclusive original jurisdiction with respect to an individual who is not an adult (as defined in IC 29-3.5-1-2(1)) over all matters concerning the following: (1) Guardians. (2) Protective proceedings under IC 29-3-4." Subsections (c) and (d) provide:

11

Accordingly, the Marion Superior Court had jurisdiction to enter its July 31, 2012 order appointing the Guardians as guardians over B.C.

The question becomes whether the Montgomery Circuit Court was authorized to adjudicate an issue that was already pending before another court when it entered its order establishing paternity. See In re Marriage of Huss, 888 N.E.2d 1238, 1241 (Ind. 2008) ("The determinative issue, however, is not whether the dissolution court failed to honor a judgment of a sister court, but whether the paternity court was authorized to adjudicate a custody issue that was already pending before another court."). In Huss, the Indiana Supreme Court held:

> The applicable principles are stated in In re Paternity of Fox, 514 N.E.2d 638 (Ind. Ct. App. 1987), trans. denied:
>
>> It is well settled that two courts of concurrent jurisdiction cannot deal with the same subject matter at the same time. Once jurisdiction over the parties and the subject matter has been secured, it is retained to the exclusion of other courts of equal competence until the case is resolved, and the rule applies where the subject matter before the separate courts is the same, but the actions are in different forms. Exclusive jurisdiction over a particular cause of action

---

(c)   A juvenile court has exclusive original jurisdiction over matters relating to the following:

　　　(1)   Minors described in IC 31-30-1-1.
　　　(2)   Matters related to guardians of the person and guardianships of the person described in IC 31-30-1-1(10).

(d)   Except as provided in subsection (c), courts with child custody jurisdiction under:

　　　(1)   IC 31-14-10;
　　　(2)   IC 31-17-2-1; or
　　　(3)   IC 31-21-5 (or IC 31-17-3-3 before its repeal);

　　　have original and continuing jurisdiction over custody matters relating to minors.

Ind. Code § 29-3-2-1.

12

vests when the complaint or other equivalent pleading or document is filed.

514 N.E.2d at 641 (internal citations omitted).

888 N.E.2d at 1241.

The paternity action began on December 19, 2012, when J.C. filed a Verified Petition to Establish Paternity, Custody, Support, and Parenting Time in the Montgomery Circuit Court. As noted earlier, this action was pending in the juvenile docket of the Montgomery Circuit Court. The next day, the Montgomery Circuit Court approved an agreed paternity order finding that J.C. was B.C.'s biological father. Generally, "[a]ll circuit courts have: (1) original and concurrent jurisdiction in all civil cases and in all criminal cases . . . ." Ind. Code § 33-28-1-2. Ind. Code § 31-30-1-1(3) governs juvenile court jurisdiction and provides: "A juvenile court has exclusive original jurisdiction, except as provided in sections 9, 10, 12, and 13 of this chapter, in the following: . . . (3) Proceedings concerning the paternity of a child under IC 31-14." The Montgomery Circuit Court had jurisdiction to enter the agreed paternity order on December 20, 2012, which established that J.C. was B.C.'s biological father. See In re Adoption of A.N.S., 741 N.E.2d 780, 784 (Ind. Ct. App. 2001) (holding that when an adoption and paternity action are both pending, paternity necessarily must be determined prior to completion of the adoption proceedings (citing Ind. Code §§ 31-14-21-1 through 31-14-21-9.2, and Ind. Code §§ 31-19-1-1)). We cannot say that the issue of whether J.C. was B.C.'s father was an issue pending before the Marion Superior Court.

We next turn to whether the Montgomery Circuit Court was authorized to adjudicate an issue that was already pending before another court when it entered its July

13

5, 2013 order finding that the Guardians should retain physical custody of B.C. at the time, that J.C. and M.B. share joint legal custody of B.C., that J.C. should have parenting time with B.C., and that Mother should have parenting time upon her release from incarceration. The guardianship, paternity, and adoption proceedings all relate to custody. Because the subject of child custody was properly before the Marion Superior Court due to the guardianship action, we conclude that the Montgomery Circuit Court was precluded from making a custody determination in the subsequently filed paternity action. See Huss, 888 N.E.2d at 1241 ("Because the subject of child custody was first properly before the Adams Circuit Court in the dissolution proceeding, we conclude that the Wells Circuit Court was precluded from making a custody determination regarding the same child in the subsequently filed paternity action.").

Even assuming that the guardianship could have been consolidated with the paternity action in the Montgomery Circuit Court, the filing of the petition for adoption in the Marion Superior Court supports the result that the Marion Superior Court and not the Montgomery Circuit Court had jurisdiction. Ind. Code § 31-19-2-14(a) provides:

> If a petition for adoption and a petition to establish paternity are pending at the same time for a child sought to be adopted, the court in which the petition for adoption has been filed has exclusive jurisdiction over the child, and the paternity proceeding must be consolidated with the adoption proceeding.

Because Ind. Code § 31-19-2-14 governs the exclusive jurisdiction when a petition for adoption and a petition to establish paternity are pending at the same time, we find that Ind. Code § 31-19-2-14 controls rather than Ind. Code § 31-30-1-1(3). See U.S. Steel Corp. v. N. Ind. Pub. Serv. Co., 951 N.E.2d 542, 560 (Ind. Ct. App. 2011) ("When

14

two statutes cover the same subject and one does so in general terms while the other does so in specific terms, the more specific statute should be applied."), reh'g denied, trans. denied.

To the extent that J.C. argues that the Guardians waived this issue, we do not find this argument persuasive. While the Guardians did not cite Ind. Code § 31-19-2-14 to the Montgomery Circuit Court, they did request a transfer of the case to the Marion Superior Court, albeit to the guardianship proceedings, and the evidence presented at the hearing in the Montgomery Circuit Court included mention of the adoption petition filed by the Guardians. Moreover, Ind. Code § 31-19-2-14 which the Guardians cited in their brief on the issue of jurisdiction filed in the Marion Superior Court provides that the court in which the petition for adoption has been filed has exclusive jurisdiction over the child. See Sanchez v. Thanos, 780 N.E.2d 1203, 1206 (Ind. Ct. App. 2003) ("Because the Bankruptcy Court had 'exclusive jurisdiction' over all of Sanchez's property upon the filing of the bankruptcy petition, the Lake Superior Court lost subject matter jurisdiction over the cash bond.").

The Indiana Supreme Court addressed Ind. Code § 31-19-2-14(a) in In re Adoption of Unborn Child of B.W., 908 N.E.2d 586 (Ind. 2009). In that case, the Court addressed whether the biological father's consent to the adoption of his child was irrevocably implied when he failed to file a motion to contest in the adoption court but did take concurrent steps to establish paternity and preserve and assert his parental rights in another court. 908 N.E.2d at 586-587. The Court held that the adoption statute creates a statutory proceeding unknown at common law and under well-established principles,

15

the Court must strictly construe the statute in favor of the rights of biological parents. <u>Id.</u> at 592. The Court then addressed Ind. Code § 31-19-2-14(a) as follows:

> This interpretation finds additional support inasmuch as "[t]he adoption statutes contemplate concurrent jurisdiction by paternity and adoption courts." <u>In re Adoption of A.N.S.</u>, 741 N.E.2d 780, 784 (Ind. Ct. App. 2001). Where a putative father opts under § 31-19-9-12(1) to file a paternity petition, the statute anticipates situations where an adoption petition is concurrently pending. In that circumstance, "the court in which the petition for adoption has been filed has exclusive jurisdiction over the child, and the paternity proceeding *must be consolidated* with the adoption proceeding." Ind. Code § 31-19-2-14(a) (emphasis added). This common-sense requirement understands that such concurrent actions are best resolved in one forum—resolution of paternity is a generally necessary prerequisite to completion of adoption proceedings since a legally proven biological father's consent to an adoption is required.

<u>Id.</u> at 592-593.

J.C. argues that the Court in <u>B.W.</u> found Ind. Code § 31-19-2-14(a) to be applicable to situations where a putative father files a paternity petition as a means of objecting to an adoption action. J.C. also argues that Ind. Code § 31-19-2-14(a) is not applicable to this situation because the paternity action was filed before the filing of an adoption action. In their reply brief, the Guardians contend that Ind. Code § 31-19-2-14(a) is applicable to situations such as presented in this case, where there are multiple causes of action and the risk of conflicting orders.

Ind. Code § 31-19-2-14 does not limit its applicability to situations in which an adoption petition is filed prior to the filing of the paternity action. Although paternity had already been established at the time the Guardians filed their petition for adoption, the paternity action remained alive. <u>See</u> <u>In re V.C.</u>, 867 N.E.2d 167, 171 (Ind. Ct. App. 2007) (noting that father filed a petition in the paternity action to modify custody of

16

child); In re A.N.S., 741 N.E.2d at 785 n.6 (noting that the paternity court "disposed of all matters brought before it by the parties, but retains jurisdiction to the extent the judgment demands, *e.g.*, the court could modify custody, child support, and visitation").

Because the petition for adoption and the paternity action were pending at the same time, the court in which the petition for adoption had been filed had exclusive jurisdiction over the custody of B.C. See Ind. Code § 31-19-2-14; see also Ind. Code § 31-14-21-13 ("Upon notice that a court in which an adoption is pending has assumed jurisdiction of a paternity action under IC 31-19-2-14, the court in which the paternity action was pending shall stay all proceedings in the paternity action until further order from the court in which the adoption is pending."). Accordingly, the Montgomery Circuit Court could not properly exercise jurisdiction to enter its July 5, 2013 order as the Marion Superior Court had exclusive jurisdiction over the custody of B.C., and the Marion Superior Court erred when it dismissed the guardianship and adoption proceedings. We reverse the Montgomery Circuit Court's July 5, 2013 order and remand with instructions for the Marion Superior Court to comply with all provisions of Ind. Code §§ 31-19 and 29-3.

CONCLUSION

For the foregoing reasons, we reverse the Montgomery Circuit Court's July 5, 2013 order, the Marion Superior Court's August 6, 2013 order dismissing the guardianship, and the Marion Superior Court's August 6, 2013 order dismissing the Guardian's petition for adoption, and remand for proceedings consistent with this opinion.

17

Reversed and remanded.

VAIDIK, C.J., and NAJAM, J., concur.