

**ATTORNEY FOR APPELLANT**

Michele Rene Igney
Kendallville, Indiana

**ATTORNEY FOR APPELLEES**

Michael M. Yoder
Kendallville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Matter of:
I.J.,

*Child,*

T.M.,

*Appellant/Intervenor,*

　　　　v.

L.D. and J.D.,

*Appellees/Petitioners.*

July 8, 2015

Court of Appeals Case No.
57A03-1501-AD-28

Appeal from the Noble Circuit
Court;
The Honorable G. David Laur,
Judge;
57C01-1403-AD-5

**May, Judge.**

[1] T.M. appeals following the adoption of I.J., asserting the court erred when it denied his motions for genetic testing and to intervene in the adoption proceedings. We reverse.

## Facts and Procedural History

[2] On March 21, 2014, I.J. was born to Ka.J. (Mother), who was married to Ke.J. Mother gave I.J. to L.D. and J.D. (Adoptive Parents)[1] and, on March 24, they filed a petition to adopt I.J. Included with their adoption petition were affidavits of consent from Mother and Ke.J.

[3] On April 3, T.M. told the court he believed he was I.J.'s biological father. T.M. registered with the putative father registry on April 15. Adoptive Parents served the petition for adoption on T.M. on May 19. The trial court appointed counsel for T.M., and he filed his motion to contest adoption on June 17.

[4] On August 12, T.M. filed a motion for genetic paternity testing. Adoptive Parents objected. On September 23, the trial court denied T.M.'s motions to contest I.J.'s adoption and to obtain genetic paternity testing in a brief order that contained no explanation for the denials. T.M. filed a motion to correct error, which the trial court denied in an order that stated:

Court considers Motion to Correct Errors and finds as follows:

---

[1] Adoptive Parents have maintained custody of I.J. since birth.

1.  To qualify as a putative father who is entitled to receive notice of an adoption, registration, pursuant to IC 31-19-5-12(a) (2) (A) must have occurred <u>earlier</u> than the date of the filing of the petition for the child's adoption.  While counsel for [T.M.] argues that the putative father registration was done within thirty (30) days of the filing of the petition for adoption, IC 31-19-5-12 only refers to "thirty (30) days after the child's birth," under subsection 1.  Subsection 2 (A) is the applicable portion of the statute which provides "the <u>earlier</u> of the date of filing of a petition for adoption."  Since the purpose of the statute is for putative fathers to receive a notice of filing of a Petition for Adoption, the filing of registration after the adoption petition is filed (the date notices are sent out by the Clerk to parties), makes no sense.  For counsel's position to be valid, the "thirty (30) days" language would appear in Section (a) if it were intended to apply to Sections 1 and 2 of the statute.

2.  In the instant case, the Petition for Adoption was filed on March 24, 2014, but putative father registration was not filed until April 15, 2014, a date after the petition was filed.  Thus, no notice of the filing of the petition for adoption is required and, pursuant to IC 31-19-5-18, this failure to timely register is a waiver constituting an irrevocable implied consent to the child's adoption.

3.  Since [T.M.]'s consent is implied, he cannot intervene and contest the adoption.

(Appellant's Br. at 16.)

The same day the court issued that order, T.M. filed a motion to reconsider, which the trial court denied in an order that provided:

The Court examines the Motion for Reconsideration filed on October 14, 2014 and finds and orders as follows:

1.    Thirty (30) days only applies in Section 1 of IC 31-19-5-12 (30 days after birth).

2.    Subsection 2 of the above statute contains no thirty (30) day language (must register prior to filing of Adoption Petition).

3.    Court disagrees with counsel's reading of statute.

4.    Pending Motion for Reconsideration is DENIED.

(*Id*. at 17.)  T.M. moved to certify the court's decision for interlocutory appeal, but the court denied that motion.  On December 19, the trial court granted Adoptive Parents' petition for adoption.

# Discussion and Decision

Our standard of review of adoption proceedings is well-settled:

> When reviewing adoption proceedings, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption.  . . .  We will not disturb the trial court's ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion.  The trial court's findings and judgment will be set aside only if they are clearly erroneous.  A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment.  We will neither reweigh the evidence nor assess the credibility of witnesses, and we will examine only the evidence most favorable to the trial court's decision.

*In re Adoption of O.R*., 16 N.E.3d 965, 972-73 (Ind. 2014) (quotations and citations omitted).

To the extent the parties' arguments require us to consider the meaning of Indiana statutes regarding adoption and paternity, we note "statutory construction is a matter of law reserved for the court and is reviewed *de novo*." *In re Infant Girl W*., 845 N.E.2d 229, 242 (Ind. Ct. App. 2006), *trans. denied*. "[I]f a statute is unambiguous, then we need not and cannot interpret it; rather, we must apply its plain and clear meaning."  *Id*.  "Words and phrases within a statute are to be given their plain, ordinary, and usual meaning unless a

contrary purpose is clearly shown by the statute itself." *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 762 (Ind. Ct. App. 2013), *trans. denied*.

## Timeliness of Registration

[8] The court determined T.M. was not entitled to challenge the adoption of I.J. because his registration with the putative father registry was untimely. While the court was correct that failure to register within the prescribed time limit results in waiver of the ability to challenge an adoption, *see In re Adoption of J.D.C.*, 751 N.E.2d 747, 750 (Ind. Ct. App. 2001) (noting putative father's failure to register waives right to notice of adoption and irrevocably implies his consent to any adoption, Ind. Code § 31-19-5-18, and thus prohibits challenge to adoption), we disagree with the court's finding T.M. failed to register in time.

[9] Indiana law provides:

> (a) To be entitled to notice of an adoption under IC 31-19-3 or IC 31-19-4, a putative father must register with the state department of health under section 5 of this chapter no later than:
>> (1) thirty (30) days after the child's birth; or
>> (2) the earlier of the date of the filing of a petition for the:
>>> (A) child's adoption; or
>>> (B) termination of the parent-child relationship between the child and the child's mother;
>> whichever occurs later.
> (b) A putative father may register under subsection (a) before the child's birth.

Ind. Code § 31-19-5-12.

The trial court determined T.M.'s registration was untimely under that statute because it occurred after the filing of the petition for adoption. (Appellant's Br. at 16.) However, pursuant to the statute, a putative father would still be entitled to notice of an adoption if he registered "no later than . . . thirty (30) days after the child's birth . . . ," Ind. Code § 31-19-5-2(a), because the deadline is thirty days after the birth *or* the date a petition is filed, "*whichever occurs later*." *Id*. (emphasis added). T.M. registered after the petition for adoption was filed, but that does not foreclose his right to challenge the adoption if he registered before I.J. was thirty days old.

I.J. was born on March 21, 2014, and T.M. registered on April 15, 2014. As T.M. registered before I.J. was thirty days old, his registration was timely. T.M. therefore was entitled to notice of the adoption and should have been permitted to contest it.[2] *Cf. In re Adoption of J.D.C.*, 751 N.E.2d at 750 (man cannot contest adoption if he does not timely register as a putative father).

### *Adequacy of Ke.J.'s Consent*

Adoptive Parents assert the court properly granted their petition to adopt I.J. because Mother and Ke.J. consented. As the court should not have dismissed

---

[2] Adoptive Parents assert T.M. has no standing to pursue this appeal because the court found his motion to contest their adoption "failed as a matter of law," (Appellees' Br. at 4), which left him a "non-party to the adoption proceeding." (*Id*.) Because T.M.'s timely registration gave him standing to challenge the adoption petition in the trial court, he has standing to challenge the adoption proceedings on appeal. *See* Ind. Appellate Rule 17(A) ("A party of record in the trial court or Administrative Agency shall be a party on appeal.").

T.M.'s motion to contest the adoption without providing T.M. an opportunity to undergo genetic testing, we cannot agree.

[13]   A petition to adopt a child may not be granted unless written consents to the adoption have been obtained from:

> Each living parent of a child born in wedlock, including a man who is presumed to be the child's biological father under IC 31-14-7-1(1) if the man is the biological or adoptive parent of the child.

Ind. Code § 31-19-9-1(a)(1).

[14]   Adoptive Parents claim the consent from Ke.J. was sufficient under that statute because he "is presumed to be the child's biological father under IC 31-14-7-1(1)." *Id*. However their reading of the consent statute ignores the fact that consent from such a man is required "if the man is the biological or adoptive parent of the child." *Id*. We may not ignore that clause. *See Mertz v. Mertz*, 971 N.E.2d 189, 195 (Ind. Ct. App. 2012) ("we will attempt to determine and give effect to the intent of the legislature, and, to that end, we read provisions of a statute together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute"), *trans. denied*.

[15]   Under Indiana Code Section 31-14-7-1, a man is presumed to be a child's biological father if the man "and the child's biological mother are or have been married to each other" and the "child is born during the marriage." To "presume" is "to suppose to be true without proof." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/presume (last

accessed April 22, 2015).  Mother was married to Ke.J. when I.J. was born, so Ke.J. was presumed to be  the father of I.J.  *See* Ind. Code § 31-14-7-1(1).

[16]  Nevertheless, the presumption of fatherhood created by Ind. Code § 31-14-7-1(1) can be rebutted by "direct, clear, and convincing evidence" that someone else is the father.  *See Minton v. Weaver*, 697 N.E.2d 1259, 1260 (Ind. Ct. App. 1998) (pursuant to Ind. Code § 31-14-7-1, mother's husband must be found to be biological father absent evidence to rebut presumption), *trans. denied*.  *See also Green v. Estate of Green*, 724 N.E.2d 260, 264 (Ind. Ct. App. 2000) (noting legal presumption of fatherhood created by marriage pursuant to Ind. Code § 31-14-7-1 is rebuttable).

[17]  One method for rebutting the presumption that a mother's husband is the father of the child is with genetic test results demonstrating greater than a 99% probability that another man is the father.  *See Minton*, 697 N.E.2d at 1260 (factfinder erred in finding presumption of husband's paternity had not been rebutted by genetic test results showing another man's probability of paternity was 99.97%); *see also* Ind. Code § 31-14-7-1(3) ("A man is presumed to be a child's biological father if: . . . the man undergoes a genetic test that indicated with at least a ninety-nine percent (99%) probability that the man is the child's biological father.").

[18]  T.M. could not produce evidence that may have rebutted the presumption that Ke.J. was the father of I.J. because the trial court denied his motion for genetic testing.  The presumption that Ke.J. is the father of I.J. would have rendered

valid his consent to I.J.'s adoption if no other man had come forward. But another man *did* come forward. T.M.'s timely registration with the putative father registry entitled him to an opportunity to challenge the presumption that Ke.J. is the father of I.J.

## Conclusion

We are mindful of the fact that I.J. has been in the care, custody, and control of Adoptive Parents since birth and our reversal may create instability in her young life. But we cannot ignore the constitutional dimension of the parental right that arose with T.M.'s timely registration with the putative father registry. Accordingly, we reverse and remand.

Reversed and remanded.

Mathias, J., concurs. Robb, J., concurs in result with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Matter of:
I.J.,
*Child*,

T.M.,

*Appellant/Intervenor,*

v.

L.D. and J.D.,

*Appellees/Petitioners.*

Court of Appeals Case No.
57A03-1501-AD-28

**Robb, Judge, concurring in result.**

[21]  I concur in the majority opinion. I write separately only to make it clear why T.M., as a third party to the marriage into which I.J. was born, has the right to intervene in this adoption and seek genetic paternity testing. It is true that Ke.J. is presumed to be I.J.'s father by operation of law because of his marriage to Mother at the time of I.J.'s birth. *See* slip op. at ¶ 15 (citing Ind. Code § 31-14-7-1(1)). As the majority notes, that is a *rebuttable* presumption. *See* slip op. at ¶ 16. It is also true that a man is presumed to be a child's biological father if he undergoes a genetic test that indicates with a certain probability that he is the child's biological father. *See* slip op. at ¶ 17 (citing Ind. Code § 31-14-7-1(3)).

But the majority does not specifically say why the trial court erred in refusing T.M.'s request for a genetic test.

[22] Indiana Code section 31-19-9-1(a)(1) allows a man who is presumed to be the child's biological father because of a marital relationship to consent to an adoption only "*if* [he] is the biological or adoptive parent of the child." The *consent statute itself* therefore grants a third party who claims to be the biological parent the right to seek genetic testing in order to rebut a husband's presumption of paternity. If the third party is otherwise entitled to notice of the adoption, a trial court is required by statute to grant such a request.

[23] As we have determined herein that T.M. timely registered with the putative father registry, and with the clarification that T.M. has the right to seek genetic paternity testing irrespective of Ke.J.'s presumed paternity, I concur.