

FILED

Jun 22 2016, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Donna Jameson | Roger A. Young |
| Greenwood, Indiana | Franklin, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: the Adoption of S.O., A.O., and N.O., | June 22, 2016 |
| P.P., | Court of Appeals Case No. 41A01-1510-AD-1781 |
| *Appellant-Respondent,* | Appeal from the Johnson Superior Court |
| v. | The Honorable Kevin M. Barton, Judge |
| A.O., | Trial Court Cause No. 41D01-1505-AD-16 |
| *Appellee-Petitioner* | |

**Baker, Judge.**

[1] P.P. (Biological Mother) appeals the judgment of the trial court, which granted an adoption petition over her objection. In an attempt to hasten the adoption process, the trial court dispensed with the statutorily required criminal background check, and did not consolidate a pending paternity action with the adoption proceeding. Reminded of the maxim, "Wisely and slow; they stumble that run fast,"[1] we reverse and remand with instructions to correct these errors.

## Facts

[2] N.O., S.O., and A.O. (Children) were born out of wedlock to Biological Mother and L.O. (Father) in 2004, 2005, and 2008, respectively. Father's paternity of Children was established by a paternity order on May 4, 2012, which also awarded him physical and legal custody of Children.[2] This order established child support and parenting time for Biological Mother. Father did not know Biological Mother's address at this time, so he attempted to serve her by publication. Biological Mother did not attend the hearing, and she was not distributed a copy of the paternity order.

[3] Biological Mother did not visit Children according to the parenting time set by the paternity court, but did visit Children when they would visit their maternal

---

[1] WILLIAM SHAKESPEARE, ROMEO AND JULIET act 2, sc. 3.

[2] We do not have a copy of the paternity court's order, but that order was cited extensively in the adoption court's order, which is how we know of the contents.

grandmother. These visits occurred roughly once per month. She also gave Children birthday presents.

[4] In February 2009, Father married Adoptive Mother (whose initials are also A.O.), and they have another child together. On May 27, 2015, Adoptive Mother filed a verified petition to adopt Children.

[5] Father and Adoptive Mother again attempted to notify Biological Mother by publication. Biological Mother learned of the adoption petition and, on August 13, 2015, filed an objection to the adoption, informing the adoption court that she did not give her consent. On August 28, 2015, Biological Mother filed a motion in the paternity court, requesting that the May 2012 paternity order be set aside. She alleged that Father's attempt to notify her by publication was defective, and argued that the paternity order was void for lack of personal jurisdiction over her.

[6] On September 14, 2015, the adoption court held a hearing on Adoptive Mother's adoption petition. At the beginning of the hearing, the parties discussed other cases that were pending in other courts. Counsel for Adoptive Mother noted the arguments made in the paternity court, and said, "after today's hearing I was going to have it transferred here . . . . I wasn't aware that we were going forward on the adoption today unless I overlooked it in the orders." Tr. p. 12. The adoption court was aware, as it mentioned at the hearing, that "there is a statute that basically says that it's mandatory that the paternity case be consolidated into the adoption case." *Id.* at 13. But all the

parties and witnesses were already gathered, the adoption court continued, "and so with that being said then we'll proceed with our hearing today on the adoption." *Id.* at 15.

[7] On September 30, 2015, the adoption court granted Adoptive Mother's petition to adopt. Although the court did not find clear and convincing evidence that Biological Mother failed to communicate with Children for over a year, it did find that she had failed to meaningfully support Children for over a year. Therefore, the adoption court found that her consent to the adoption was not necessary. Biological Mother now appeals.

# Discussion and Decision

## I. Standard of Review

[8] The appropriate standard of review on appeal where an adoption petition has been granted is to consider the evidence most favorable to the petitioner and the reasonable inferences which can be drawn therefrom to determine whether sufficient evidence exists to sustain the trial court's decision. *Irvin v. Hood*, 712 N.E.2d 1012, 1013 (Ind. Ct. App. 1999). We will not disturb the trial court's decision in an adoption proceeding unless the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion. *Id.* On appeal, we will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision. *Id.*

## II. Background Check

[9] Biological Mother argues that Adoptive Mother and the adoption court failed to comply with the statutory supervision requirements. Indiana Code section 31-19-8-1 says that "[a]n adoption may be granted in Indiana only after . . . except as provided in section 2(c) of this chapter, a period of supervision . . . by a licensed child placing agency for a child who has not been adjudicated to be a child in need of services." All parties agree that no such supervision took place, but Adoptive Mother argues that she took advantage of the exception in section 2(c). That exception applies "if one (1) of the petitioners is a stepparent . . . of the child and the court waives the report under section 5(c) of this chapter." I.C. § 31-19-8-2(c).

[10] Section 5(c) repeats that the court may waive the supervision report if one of the petitioners is a stepparent, but the next subsection provides the following:

> (d) If the court waives the reports required under subsection (a), the court shall require the licensed child placing agency for a child who is not adjudicated to be a child in need of services or, if the child is the subject of an open child in need of services action, each local office to:
>
> > (1) ensure a criminal history check is conducted under IC 31-19-2-7.5; and
> >
> > (2) report to the court the results of the criminal history check.

I.C. § 31-19-8-5(d).

[11] We must pause our analysis to note a glaring deficiency in the instant case: we can find no mention in the record of any involvement of any licensed child placing agency or any Department of Child Services (DCS) office. Our General Assembly has required that every adoption case—whether done by stepparent, blood relative, or a nonrelative—involve either a licensed child placing agency or DCS. In general, every petitioner must have such an agency complete the period of supervision along with a report. I.C. § 31-19-8-1. Although the supervisory period and report can be waived for stepparents or grandparents, I.C. § 31-19-8-5(c), exercising that waiver then obligates the court to order an agency to conduct a criminal history check and complete a report. I.C. § 31-19-8-5(d). In sum, the absence of any child placing agency or DCS in this case means an error has occurred.

[12] After Adoptive Mother filed her May 27, 2015 adoption petition, the adoption court responded on June 4 with an "Order Upon Filing of Petition for Adoption." Appellant's App. p. 44. That order listed several requirements to be satisfied before the court would set a hearing. One requirement was the following:

> if the Petitioner qualifies under I.C. 31-19-8-5(c)(1)[3]; [Petitioner may] file a request for waiver of a report by a licensed child placing agency AND submit a self-produced report that is comparable to such report, and which includes information on

---

[3] There is no subsection -5(c)(1). The text of subsection 5(c) discusses what to do "if one (1) of the petitioners is a stepparent . . . ." The order has apparently mistaken that number for a further subdivision.

education, family background, family relationships and financial information of the petitioner and family members, a criminal record check and check regarding any investigations for child abuse from the Department of Child Services.

*Id.* at 44-45.

[13] We cannot find any statutory sanction for the proposition that one can waive all involvement of child placing agencies or DCS by providing the court with a self-produced report. This instruction from the adoption court was erroneous. The question becomes whether the error is reversible error.

[14] Returning to our analysis of the adoption statutes, Indiana Code section 31-9-2-22.5 defines "conduct a criminal history check" for the purposes of Indiana Code article 31-19, which is the article governing adoption. Summarized, a proper criminal history check (hereinafter, a "22.5 check") of someone petitioning for adoption includes (1) the state police conducting a fingerprint based check of national and state records; (2) collecting reports of child abuse or neglect from any jurisdiction in which the petitioner has recently resided; (3) requesting information regarding reports of child abuse or neglect contained in a national registry maintained by the United States Department of Health and Human Services; (4) conducting a check of the United States Department of Justice's national sex offender registry; and (5) conducting a check of local law enforcement records from any jurisdiction in which the petitioner has recently resided. I.C. § 31-9-2-22.5. Indiana Code section 31-19-2-7.5 requires the petitioner to submit the necessary information, forms, or consents required by

the agency to conduct a 22.5 check, excepting only those petitioners who have completed a 22.5 check within the year preceding the petition and have submitted the results to the agency.

[15] Adoptive Mother makes two arguments as to why the absence of any agency involvement and the absence of a 22.5 check are not reversible error. First, she argues that she provided a criminal records check from the Johnson County Sheriff's Office and a Child Protective Services (CPS) History Check. The former did not find any criminal records, but it notes, "This information is limited to arrests made by the Johnson County Sheriff's Office and those whom have been incarcerated in the Johnson County Law Enforcement Facility." Appellee's App. p. 11. The latter confirmed that Adoptive Mother did not have a record of child abuse or neglect in the state of Indiana. *Id.* at 12. Adoptive Mother argues that she substantially complied with the background check requirements because the "background checks that were submitted disclosed that Appellee had no criminal history which would have prevented the adoption and no evidence was introduced to the contrary." Appellee's Br. p. 11.

[16] We cannot agree that Adoptive Mother substantially complied with the requirements of a 22.5 check. Of the five sections of a 22.5 check, she has (at most) substantially complied with subsections (2) and (5), and done nothing regarding sections (1), (3), and (4). In other words, she has only attempted to comply with less than half of what a 22.5 check requires. Moreover, while she has conducted the two portions of the 22.5 check that involve local law

enforcement, she has wholly omitted all of the portions that involve a national search. Our General Assembly included all five portions in the 22.5 check to ensure that a thorough, nation-wide search was done; we simply cannot say that a criminal records search in one Indiana county, combined with a CPS search of one of the fifty states, substantially complies with the exacting standard set out in Indiana Code section 31-9-2-22.5.

[17] Adoptive Mother's second argument is that Biological Mother "did not object to the criminal history check, nor argue that the background checks that were submitted failed to provide the court with sufficient information to make a best interests determination." Appellee's App. p. 11. We understand this argument to be that the lack of a 22.5 check was either invited error or harmless error.

[18] Again, we cannot agree. Our General Assembly took the time to lay out all the components of a criminal background check for a reason: they are vitally necessary for the safety of adoptive children. If only Biological Mother's rights were at stake, we would be tempted to find that her silence on this issue constituted invited error. It is well settled that a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *Pitman v. Pitman*, 717 N.E.2d 627, 633 (Ind. Ct. App. 1999). But an adoption is about more than the rights of the biological parent; it is about the safety and the best interests of the adopted child. Thus, we cannot dismiss the absence of a 22.5 check as an invited error.

[19] What is more, our General Assembly has specifically legislated that "[a] court may not waive any criminal history check requirements set forth in this chapter." I.C. § 31-19-2-7.3. The requirement to get a 22.5 check comes from that same chapter. I.C. § 31-19-2-7.5. Given that our General Assembly has explicitly instructed that no part of a 22.5 check can be waived, and that the adoption court here has apparently waived all of the national components of the 22.5 check, we cannot say that the deficiencies in the criminal background check were harmless in this case.

[20] It has long been the case that the adoption statutes are "in derogation of the common law, which made no provision for the adoption of children . . . and [they] must be strictly followed in all essential particulars." *Glansman v. Ledbetter*, 190 Ind. 505, 516-17, 130 N.E. 230, 234 (1921). To avoid harsh results, our Supreme Court has also counseled that the statutes should not be so strictly construed as to defeat their purposes. *Emmons v. Dinelli*, 235 Ind. 249, 260-61, 133 N.E.2d 56, 61 (1956).

[21] Our General Assembly was aware that we strictly construe the adoption statutes, and still took the time to reiterate that the 22.5 check cannot be waived. I.C. § 31-19-2-7.3. It follows that a criminal background check that complies with Indiana Code section 31-9-2-22.5 is an essential particular of the adoption process; its absence renders an adoption petition fatally deficient.

# III. Consolidating Paternity Action

[22] Biological Mother also contends that the trial court was required to consolidate the previous paternity case with the present adoption case. She argues that the adoption court's failure to do so constitutes reversible error.

[23] Biological Mother's argument centers on Indiana Code section 31-19-2-14(a), which provides the following:

> If a petition for adoption and a paternity action are pending at the same time for a child sought to be adopted, the court in which the petition for adoption has been filed has exclusive jurisdiction over the child, and the paternity proceeding must be consolidated with the adoption proceeding.

Even after paternity is established, the paternity action remains pending. *See, e.g., In re A.N.S.*, 741 N.E.2d 780, 785 n.6 (Ind. Ct. App. 2001) (the paternity court "retains jurisdiction to the extent the judgment demands, e.g., the court could modify custody, child support, and visitation"). We have previously held that a trial court that once possessed jurisdiction over a paternity case loses that jurisdiction when an adoption petition is filed in another trial court. *In re B.C.*, 9 N.E.3d 745 (Ind. Ct. App. 2014). There is no case addressing the question before us, namely, whether the adoption court, having acquired exclusive jurisdiction, is required to consolidate the paternity case before ruling on the adoption petition.

[24] Biological Mother argues that the adoption court should have consolidated the paternity case before holding a hearing because she is seeking to challenge the

validity of the paternity court's order. She argues that, although Adoptive Mother filed an Affidavit of Diligent Search in that case, Adoptive Mother's affidavit was not verified or signed, and it contained only a general averment that a diligent search was done, rather than stating what actions she took to notify Biological Mother. Biological Mother contends that the failure to consolidate the paternity action in this case prejudiced her because she is not able to challenge her alleged lack of notice of the paternity petition.

[25] We express no opinion on Biological Mother's claims regarding the sufficiency of notice in the paternity action, as that case is not before us and would likely depend on determinations of fact. We do find, however, that the paternity action should have been consolidated with the adoption proceeding before the adoption court issued its decision.

[26] An adoption proceeding is unlike a paternity proceeding in that once an adoption is granted, the adoption case closes. Indiana Code section 31-19-2-14(a) mandates that the paternity action be consolidated with the adoption proceeding. But if the adoption case is decided first, the adoption case closes and there would no longer be any proceeding with which the paternity action could be consolidated. Thus, ruling on the adoption petition first would render compliance with Indiana Code section 31-19-2-14(a) impossible.

[27] Moreover, the paternity action needs to be consolidated with the adoption proceeding because a successful adoption petition severs the parental rights and obligations of the biological parents. Ind. Code § 31-19-15-1. Thus, upon the

grant of an adoption petition, the paternity action should close. But upon the filing of the adoption petition, the paternity court loses jurisdiction to rule on the paternity case. *In re B.C.*, 9 N.E.3d at 754. And if the adoption court issues its ruling, the adoption case closes and the adoption court can no longer rule on the paternity case. Thus, a paternity action that should be closed will instead exist in limbo with no court able to close it.

[28]     Instead, the adoption court should consolidate the paternity action before issuing its adoption decree. This way, the adoption court will be able to close the paternity action if it grants the adoption petition. In addition, many issues present in the paternity action will also have a bearing on the adoption analysis, and so an early consolidation will aid the adoption court's decision.

[29]     The decision of the trial court is reversed and remanded with instructions to consolidate the paternity action and to order a statutorily compliant background check.

May, J., and Brown, J., concur.