## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 16 2017, 9:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew R. Wolf
The Wolf Law Office
Michigan City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Adoption of L.J. and E.J., minors, | May 16, 2017 |
| | Court of Appeals Case No. 64A03-1608-AD-1886 |
| Crystal Satter, | |
| *Appellant-Respondent,* | Appeal from the Porter Superior Court |
| v. | The Hon. William E. Alexa, Judge |
| Jason James and Jennifer James, | Trial Court Cause No. 64D02-1508-AD-7208 |
| *Appellees-Petitioners.* | |

**Bradford, Judge.**

# Case Summary

On October 15, 2007, a court order declared that Appellee-Petitioner Jason James (hereafter "Father") was the biological father of both L.J. and E.J. (collectively, "the Children"). At the time, Appellant-Respondent Crystal Satter ("Birth Mother") was awarded custody of the children, with Father holding rights to parenting time and obligations to pay child support. In 2012, Father was awarded physical and legal custody of the Children, with Mother being granted visitation twice a week at the Family Life facility. Eventually, Father married Jennifer James ("Step-Mother"), and Birth Mother became pregnant with twins by her boyfriend, Brian Piunti.

In August of 2014, Birth Mother gave birth to twin girls but refused to allow the Children to visit them and her in the Hospital or to take the twins to Family Life. Between August of 2014 and August of 2015, Birth Mother saw the Children for a total of one hour and did not otherwise communicate with them, despite efforts by the Children's guardian ad litem ("GAL") to arrange supervised visitation. On August 25, 2015, Father and Step-Mother petitioned for Step-Mother to adopt the Children. Following a hearing, the adoption court ruled that Birth Mother's consent to adoption of the Children by Step-Mother was not required and entered an order of adoption. No criminal history check of Step-Mother was performed, however. Birth Mother contends that the adoption court abused its discretion in concluding that her consent to the adoption was not required and in not ordering a criminal history check be

performed on Step-Mother. Because we disagree with the first contention but agree with the second, we affirm in part, reverse in part, and remand with instructions to order a criminal history check on Step-Mother and for further proceedings.

## Facts and Procedural History

[3] On October 15, 2007, the paternity court, in cause number 64C01-0706-JP-648, found that Father was the biological father of the Children. At the time, Birth Mother was awarded physical and legal custody of the children, with Father holding rights to parenting time and obligations to pay child support. On November 21, 2008, the paternity court appointed Ana Osan to be a GAL following Birth Mother's ultimately unsubstantiated allegations of sexual misconduct by Father with the Children. During a court-ordered investigation of the sexual misconduct allegations, the Children were evaluated by Dr. Tiffany Simpson and have continued to receive regular counseling from her. Following motions to modify custody and parenting time by both parties, the paternity court appointed a special judge on January 10, 2012, and granted physical custody to Father, including sole legal custody. Birth Mother was to have parenting time with the Children twice a week at Family House. At one of these visits in late 2013 or early 2014, Birth Mother announced to the Children that she was pregnant with twins she was having with Piunti. Mother had been advised by her counselor to tell the Children first and then speak with

Dr. Simpson about the potential effects and/consequences that the news might have, advice GAL Osan found to be "flabbergasting[.]" Tr. Vol. II p. 12.

[4] On July 31, 2014, GAL Osan filed an emergency petition to withhold records and suspend contact, which was granted by the paternity court and disallowed any further communication between Father and Birth Mother. GAL Osan then filed a petition to modify Birth Mother's parenting time, and the paternity court affirmed a suspension of Birth Mother's parenting time on September 18, 2014.

[5] On August 25, 2015, Father and Step-Mother filed a petition for adoption of the Children by Step-Mother with the adoption court. At the time, a petition to modify custody was pending in the paternity court, filed by Birth Mother. The paternity court denied Birth Mother's petition to modify custody on April 28, 2014, and ordered the suspension of any parenting time until after the petition for adoption was ruled on. Birth Mother then filed a timely objection to the petition for adoption.

[6] The adoption court conducted the hearing on the petition for adoption on February 5, 2016, and consolidated the paternity action with the adoption case. GAL Osan testified during the hearing that the Children were excited about Birth Mother's twins, who were born in August of 2014, and wished to see them in the hospital. GAL Osan, mindful that Family House visitation might not be feasible following the twins' birth, attempted to arrange a hospital visit for the Children and to maintain parenting time "maybe doing some sort of

Skype or FaceTime or telephonic" but received no response from Birth Mother. Tr. Vol. II p. 13.

[7] GAL Osan also testified that the visitation that occurred on December 23, 2014, coincided with Birth Mother's separation from Piunti four days previously and that "there was a lot of movement being made to schedule meetings" while Birth Mother and Piunti were separated. Tr. Vol. II p. 15. Birth Mother and Piunti, however, reunited in Early March of 2015, and the "picture change[d] dramatically"; other than a meeting between GAL Osan, Birth Mother, Birth Mother's attorney, and Dr. Simpson on April 27, 2015, there had been no additional communication with Birth Mother. Tr. Vol. II p. 15. At the April meeting, requirements for resumption of parenting time with the Children were discussed with Birth Mother, including psychological evaluations for herself and Piunti, to which Birth Mother agreed but never occurred. Birth Mother also did not take advantage of opportunities to have visitation supervised by Dr. Simpson.

[8] GAL Osan observed that Birth Mother had developed a high level of animosity toward Dr. Simpson and believed that GAL Osan and Dr. Simpson did not like her and "had a vendetta out for her." Tr. Vol. II p. 20. GAL Osan opined that all services that could have been offered, recommended, or ordered to avoid the adoption scenario, were, and that the influence of a third party (presumably Piunti) is putting Birth Mother "in a very precarious position[.]" Tr. Vol. II p. 25. GAL Osan testified that it was not in the Children's best interest to continue their current family situation.

[9] Birth Mother testified that she had not "substantially" seen the Children since June of 2014, with "an hour visit for Christmas on December 23, 2014." Tr. Vol. II p. 55. Birth Mother also testified that Father, GAL Osan, and the Children's counselor used her twins as an excuse to prevent her from seeing the Children because Birth Mother would not introduce the twins to them. Mother testified that her reluctance to take the twins to visitation with the Children was due to concern about the risk of infection at Family House, although she had testified in a previous hearing that Piunti had refused to allow her to take them. Birth Mother testified that she was aware of attempts to have the Children visit her and the twins in the hospital but did not agree to it because she was "recovering [and] wouldn't want them to see me like that." Tr. Vol. II p. 58. Birth Mother indicated her belief that Father, Step-Mother, and Dr. Simpson were intentionally acting to prevent her from seeing the Children. At the end of the hearing, the adoption court instructed the parties to address whether waiver of consent of Birth Mother was required as a matter of law.

[10] On March 24, 2016, the adoption court, upon receiving the summations from both parties, determined that the consent of Birth Mother was not required and that the adoption petition should be granted. The adoption court's order provides, in part, as follows:

> 2. There has been no substantial contact between the Respondent and the minor children for at least a one (1) year period prior to the filing of the Petition for Adoption by Petitioner and after extensive efforts to facilitate Visitation by Respondent with the minor children.

3.    The consent of the natural mother of the two (2) minor children to this Adoption is not required pursuant to IC 31-19-9-1 and IC 31-19-9-8(a)(2)(A).

4.    The Court finds, by clear and convincing evidence, that Respondent is unfit to be a parent of these minor children and it is in the best interest of the two (2) minor children that the Respondent's consent to the adoption be dispensed with.

5.    The Court further finds that the allegations contained in the Petitioner's Petition of Adoption are true and Petitioner has sufficient ability and means to rear the minor children and to furnish suitable support and education for the children.  It [is] absolutely in the best interest of the minor children that this Petition for Adoption be granted.

IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED, AND DECREED by the Court that the consent to this adoption by the Respondent, Crystal Satter, is not required and the parental rights of the Respondent, Crystal Samar should be, and they hereby are, terminated.

IT IS FURTHER ORDERED, ADJUDGIED, AND DECREED that it is in the best interest of the minor children, Logan Michael James and Evan Levine James that this adoption be, and it hereby is, GRANTED.

Order pp. 2-3.  Birth Mother filed a timely motion to correct error that was not ruled on within forty-five days.  In accordance with Indiana Trial Rule 53.3, the motion is deemed denied.

# Discussion and Decision

[11]    In the present case, Father has not submitted a Brief of Appellee.  As a result, "[i]nstead of imposing upon this court the burden of controverting arguments advanced for reversal, [we] have long applied a less stringent standard of review

with respect to showings of reversible error when the appellee fails to file a brief." *Johnson Cty. Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind. Ct. App. 1985). Birth Mother need only prove prima facie error to win reversal. *Id.* (citing *Ind. State Bd. Of Health v. Lakeland Disposal Serv., Inc.*, 461 N.E.2d 1145, 1145 n.1 (Ind. Ct. App. 1984)). "In this context, 'prima facie' means at first sight, on first appearance, or on the face of it." *Id.* (quoting *Harrington v. Harrington*, 142 Ind. App. 87, 88, 233 N.E.2d 189, 191 (1968)).

> Pursuant to Indiana Code section 31-19-11-1(a), the trial court shall grant an adoption petition if, in relevant part, the adoption is in the child's best interest; the petitioner is sufficiently capable of rearing and supporting the child; and proper consent, if required, has been given. Following the entry of an adoption decree, our standard of review on appeal "is to consider the evidence most favorable to the petitioner and the reasonable inferences which can be drawn therefrom to determine whether sufficient evidence exists to sustain the trial court's decision." *In re Adoption of S.O.*, 56 N.E.3d 77, 80 (Ind. Ct. App. 2016). Our court will not overturn the trial court's decision regarding an adoption "unless the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion." *Id.* We do not reweigh evidence, and because we presume that the trial court's decision is correct, the appellant bears the burden of overcoming that presumption. *In re Adoption of H.N.P.G.*, 878 N.E.2d 900, 903 (Ind. Ct. App. 2008), *trans. denied*.

*Matter of Adoption of C. J.*, 71 N.E.3d 436, 442 (Ind. Ct. App. 2017).

## I. Requirement of Birth Mother's Consent to Adoption

Birth Mother contends that the adoption court abused its discretion in concluding that her consent to the adoption was not required. Indiana Code

section 31-19-9-8(a)(2)(A) provides that "[c]onsent to adoption … is not required from [a] parent of a child in the custody of another person if for a period of at least one (1) year the parent … fails without justifiable cause to communicate significantly with the child when able to do so[.]" The adoption court determined that Birth Mother's consent to the adoption was not required because of her failure to communicate significantly with the Children for the statutory period of a year without justification, specifically, the year from August 24, 2014, to August 24, 2015.

[13] We conclude that there is sufficient evidence to support the trial court's conclusion that Birth Mother's consent to the adoption was not required. The record indicates that Birth Mother saw the Children for a total of one hour between August 24, 2014, to August 25, 2015, and there is no indication of any other communication of any kind during that period. GAL Osan testified that numerous attempts to arrange visitation and/or other parenting between Birth Mother and the Children were unsuccessful, with many communications to Birth Mother going unanswered and unacknowledged. Birth Mother refused to undergo a psychological evaluation as a condition precedent for reestablishing visitation and did not participate in proposed supervised visitation.

[14] GAL Osan concluded that Birth Mother's relationship with Piunti, and his influence over her, were obstacles to reestablishing parenting time, and the record bears this out. Mother testified in a hearing that Piunti refused to allow her to take the twins to visitation with the Children. Over the course of the year in question, the only actual visitation—and the only significant steps to arrange

more visitation—occurred during a brief period when Birth Mother and Piunti were separated. GAL Osan noted that when Birth Mother and Piunti reconciled, communication ceased. In short, the record supports a conclusion that Birth Mother's failure to communicate significantly with the Children for more than a year was without justification.

Mother testified to the many reasons that she claims caused her to not communicate significantly with the Children and argues that they provide justification. Even if we assume that her reasons would justify her failure to communicate, the adoption judge was under no obligation to credit Birth Mother's testimony, and likely did not. Birth Mother's argument is nothing more than an invitation to reweigh the evidence, which we will not do. *See Adoption of C. J.*, 71 N.E.3d at 442. The adoption court did not abuse its discretion in concluding that Birth Mother's consent to the adoption of the Children was not required.

## II. Criminal History Check on Step-Mother

Birth Mother notes, correctly, that Indiana Code section 31-19-8-1 requires a period of supervision by a licensed child placing agency, which could include the Indiana Department of Child Services. The adoption court has the ability to waive that requirement where one of the petitioners is a step-parent. *See* Ind. Code § 31-19-8-2(c). However, pursuant to Indiana Code section 31-19-8-5(d), if the adoption court waives that period of supervision and the following report,

the adoption court "shall require" the licensed child placing agency to conduct a criminal history check on the step-parent and report the results.

[17] Here, the adoption court granted Father and Step-Mother's motion to waive both the period of supervision and home study because of Step-Mother's status as a step-parent of the Children. The adoption court, however, provided no subsequent instructions for any relevant agency to conduct a criminal background check. This failure to conduct the background check constitutes clear error. Indiana Code section 31-19-8-5(d) provides that the adoption court "shall" order a criminal background check of the prospective adoptive step-parent when the proper conditions are met, and the relevant statutory language provides no provision for waiver of this requirement. As such, we remand with instructions to order a criminal history check on Step-Mother.

# Conclusion

[18] We affirm the adoption court's conclusion that Birth Mother's consent to the adoption of the Children by Step-Mother is not required. However, we reverse the trial court's grant of Father and Step-Mother's petition for Step-Mother to adopt the Children because the required criminal history check was not performed on Step-Mother. We remand with instructions to order a criminal history check on Step-Mother pursuant to Indiana Code section 31-19-8-5(d) and for further proceedings following the results of the criminal history check.

[19] We affirm in part, reverse in part, and remand with instructions.

Vaidik, C.J., and Brown, J., concur.