## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 13 2018, 8:30 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John M. Haecker
Squiller & Hamilton, LLP
Auburn, Indiana

ATTORNEYS FOR APPELLEE

Patrick L. Jessup
Michael M. Yoder
Yoder & Kraus, P.C.
Kendallville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.M., | March 13, 2018 |
| *Appellant-Respondent,* | Court of Appeals Case No. 57A05-1709-AD-2194 |
| v. | Appeal from the Noble Circuit Court |
| L.D. and J.D., | The Honorable Michael, J. Kramer, Judge |
| *Appellees-Petitioners.* | Trial Court Cause No. 57C01-1403-AD-5 |

**Najam, Judge.**

## Statement of the Case

[1]     T.M. ("Father") appeals the adoption court's judgment and decree of adoption in which it granted a petition to adopt Father's minor daughter, I.J. ("Child"),

filed by L.D. and J.D. (collectively, "Adoptive Parents"). Father raises two issues for our review, which we restate as follows:

1.  Whether the adoption court erred when it concluded that Father's consent to the adoption was not required.

2.  Whether the adoption court erred when it granted the adoption in violation of several statutory provisions regarding adoptions.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

Child was born on March 21, 2014, to K.J. ("Mother"). When Child was born, Mother was incarcerated, and doctors found opiates in Child's system and treated her for withdrawal and jaundice. On March 24, the Adoptive Parents (Mother's sister, L.D., and L.D.'s husband, J.D.) filed a petition to adopt Child in the Noble Circuit Court ("adoption court"). Along with the petition, the Adoptive Parents filed Mother's consent to the adoption.[1] Also on March 24, the Adoptive Parents filed a motion to waive the home study, and the Adoptive Parents filed a petition in which they requested temporary custody and a waiver of the requirement for prior written approval of a child placing agency. That same day, the adoption court granted the Adoptive Parents' motion and waived

---

[1] When Child was born, Mother was married to Ke.J. As Mother's husband, Ke.J. was originally presumed to be Child's father. *See* Ind. Code § 31-14-7-1 (2017). As such, the Adoptive Parents also filed his consent to the adoption with their petition.

the home study, and it entered an order granting custody of Child to the Adoptive Parents.

[4] At the time of Child's birth, Father was serving an eight-year sentence for dealing in methamphetamine, as a Level B felony. On June 17, Father filed a motion to contest the adoption and requested a hearing.[2] On July 29, Father filed a motion for genetic testing, which the adoption court ultimately granted. Thereafter, Father filed with the adoption court the results of the genetic test, which showed that there is a 99.99% chance that Father is the father of Child. On August 17, 2016, Father filed a paternity action in the Noble Superior Court ("paternity court"). The paternity court appointed a guardian ad litem ("GAL") for Child.

[5] On January 30, Father was arrested for possession of methamphetamine, but he pleaded not guilty to that charge. In the adoption court, the Adoptive Parents filed a motion to consolidate the paternity action with the adoption petition, but the court denied their request. On March 22, the GAL submitted a report to the paternity court, which included her recommendations regarding the adoption based on interviews and home studies she had conducted with Mother, Father, and the Adoptive Parents. The GAL recommended that the

---

[2] The adoption court originally determined that Father was not able to challenge the adoption of Child because he did not timely register with the putative father registry. But, on appeal, this court held that Father filed with the registry before Child was thirty days old and, as such, his registration was timely and he should have been permitted to contest the adoption. *T.M. v. L.D. (In re I.J.)*, 39 N.E.3d 1184, 1187 (Ind. Ct. App. 2015).

best physical placement for the Child was with the Adoptive Parents and that Father should not have any contact with Child until he could resolve his pending criminal charges. On April 17, the paternity court: issued its order in which it determined that Father was the father of Child; deferred the issues of custody, parenting time, and related issues to be scheduled for a hearing upon the request of either party; and released the GAL from her appointment.

[6] On May 26, 2017, Father was arrested for driving while intoxicated. He later admitted to his probation officer that he had consumed alcohol on May 26 and that he had used methamphetamine on May 20 and May 27. On July 13, Father admitted to a probation violation and was sentenced to one year executed.

[7] In the adoption court, the Adoptive Parents deposed the GAL, who testified about her investigation and her recommendation regarding the adoption. On July 27, the adoption court held an evidentiary hearing on the adoption petition. Father was present and represented by counsel. During the hearing, the Adoptive Parents moved to admit the GAL's deposition and report as evidence, and the court agreed. On August 17, the adoption court issued its judgment and decree of adoption in which it concluded that Father's consent to the adoption was not required because he is unfit to be a parent and because it is in the best interests of Child for the court to dispense with Father's consent to the adoption. The adoption court then approved the Adoptive Parent's adoption petition. This appeal ensued.

# Discussion and Decision[3]

## *Issue One: Father's Consent to the Adoption*

[8]     Father first contends that the adoption court erred when it concluded that his consent to the adoption was not required. The Indiana Supreme Court has set forth our standard of review for adoption proceedings as follows:

> When reviewing adoption proceedings, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption. We generally give considerable deference to the trial court's decision in family law matters, because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children. We will not disturb the trial court's ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. The trial court's findings and judgment will be set aside only if they are clearly erroneous. A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. We will neither reweigh the evidence nor assess the credibility of witnesses, and we will examine only the evidence most favorable to the trial court's decision.

---

[3] Father acknowledges that his notice of appeal was "technically untimely" because it was filed more than thirty days after the adoption court entered its judgment and decree of adoption on August 17. Appellant's Br. at 7. However, Father filed a letter with the adoption court on September 14 in which he requested the appointment of appellate counsel in order to appeal the judgment. On September 20, the adoption court appointed an attorney to represent Father, and his attorney filed the notice of appeal on September 21. Based on Father's attempt to perfect a timely appeal, we conclude that Father's appeal deserves a determination on the merits. *See N.R. v. K.G. (In re O.R.)*, 16 N.E.3d 965, 972 (Ind. 2014).

*N.R. v. K.G. (In re O.R.)*, 16 N.E.3d 965, 972-73 (Ind. 2014) (internal quotation marks and citations omitted).

[9] Father contends that the adoption court erred when it found that his consent to the adoption was not required because he is unfit to be a parent and because it was in the best interests of the Child to dispense with Father's consent. "Generally, a trial court may only grant a petition to adopt a child born out of wedlock who is less than eighteen years of age if both '[t]he mother of [the] child' and 'the father of [the] child whose paternity has been established' consent to the adoption." *Id.* at 973 (quoting Indiana Code § 31-19-9-1(a)(2)) (alterations original to *In re O.R.*). However, there are exceptions to that general rule. One such exception states that consent to the adoption is not required from:

> (11) A parent if:
>
>> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
>>
>> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

Ind. Code § 31-19-9-8(a)(11) (2017). Here, the Adoptive Parents, as the petitioners, had the burden of proving by clear and convincing evidence in the adoption court that Father's consent was not required.

The adoption court first concluded that Father's consent to the adoption was not required because he is unfit to be a parent. The statute does not provide a definition of "unfit," but in *J.H. v. J.L. (In re M.L.)*, this court determined that

> termination cases provide useful guidance as to what makes a parent 'unfit[' in the context of an adoption case]. In these cases, we have considered such factors as a parent's substance abuse, mental health, willingness to follow recommended treatment, lack of insight, instability in housing and employment, and ability to care for a child's special needs.

973 N.E.2d 1216, 1223 (Ind. Ct. App. 2012).

Here, Father has a history of substance abuse. He was convicted of dealing in methamphetamine, a Level B felony, and, as a result, he was incarcerated at the time of Child's birth. After Father's release, he violated his probation and was again incarcerated after he was arrested for driving while intoxicated. Father admitted to his probation officer that, on May 26, 2017, he drank a pint of rum and a few shots of tequila, and he then attempted to drive home. Father further admitted to his probation officer that he had used methamphetamine on May 20 and May 27, less than two months before the final hearing on the adoption petition. Father admitted that he is an addict. Father also has a history of unstable employment and housing, and he has not contributed to Child's support since her birth.

Still, Father contends that "[t]here is no evidence as to whether the activity which resulted in the conviction [for dealing in methamphetamine] occurred before or after the child was conceived" and that that is a factor for a court to

consider in order to determine if Father is unfit to be a parent. Appellant's Br. at 16. Father further contends that there is no evidence that Father "ever acted inappropriately with or harmed a child" or that Father's "struggles with controlled substances has had any effect on the child." *Id.* Father's assertions are merely requests that we reweigh the evidence, which we cannot do. *In re O.R.*, 16 N.E.3d at 973. There is sufficient evidence to support the adoption court's finding that Father is unfit to be a parent.

[13] The adoption court next found that it is in the best interests of Child to dispense with Father's consent to the adoption because the Adoptive Parents have had care and custody of Child since her birth; they have provided for Child emotionally, physically, and financially; and they have developed a stable, supportive, and nurturing environment in which to raise Child. The evidence presented at the final adoption hearing also supports those findings. J.D. testified that he and L.D. have had custody of Child since birth. He further testified that Father has not provided any support or had any contact with Child since her birth. L.D. testified that she and Child do everything together, that Child will occasionally go to work with J.D. or L.D., and that they spend time as a family at the church where J.D. is employed.

[14] The evidence most favorable to the court's decision supports its findings, and the findings support the court's judgment that Father's consent to the adoption is not required pursuant to Indiana Code Section 31-19-9-8(a)(11) because Father is unfit to be a parent and because it is in the best interest of Child to dispense with Father's consent. Thus, we cannot say that the evidence leads to

but one conclusion and the adoption court reached the opposite conclusion. Therefore, we affirm the adoption court's conclusion that Father's consent to the adoption is not required.

### Issue Two: Statutory Requirements

Father next asserts that the adoption court erred when it granted the adoption because it failed to meet several statutory provisions regarding adoptions. "It has long been the case that the adoption statutes are 'in derogation of the common law, which make[s] no provision for the adoption of children . . . [,] and [they] must be strictly followed in all essential particulars.'" *P.P. v. A.O. (In re S.O.)*, 56 N.E.3d 77, 82-83 (Ind. Ct. App. 2016) (quoting *Glansman v. Ledbetter*, 130 N.E. 230, 234 (Ind. 1921)) (omission and second alteration original to *In re S.O.*). However, they "should not be so strictly construed as to defeat their purposes." *Id*. at 83. Father specifically contends that the adoption court erred when it: (1) granted the adoption without a hearing on Father's motion to contest the adoption; (2) granted the adoption without the involvement of a child placing agency, the required period of supervision, the required written report of investigation, or a finding that such a report had been filed; and (3) failed to consolidate the paternity action with the adoption case. We address each argument in turn.

### Hearing on Father's Motion to Contest Adoption

Father maintains that the adoption court erred when it granted the adoption without having held a hearing on his motion to contest the adoption. Father

contends that, in his motion to contest the adoption, he "specifically requested" a hearing pursuant to Indiana Code Section 31-19-10-5, but the adoption court "took no action upon it." Appellant's Br. at 13. We cannot agree.

[17] Indiana Code Section 31-19-10-5 provides that, "[w]henever a motion to contest an adoption is filed, the court shall, before entering a decree under I[.]C[. Chapter] 31-19-11, set the matter for a hearing to contest the adoption." Here, while the record is not clear whether the adoption court had explicitly consolidated the hearing on the adoption petition with Father's petition to contest the adoption, our review of the transcript of the July 27, 2017, hearing satisfies us that the hearing addressed both petitions. Moreover, Father was present at the hearing; he was represented by counsel; he was able to cross-examine witnesses; he had the opportunity to present witnesses and evidence, including his own testimony; and he had the opportunity to object to the admission of evidence. And Father makes no contention that he was deprived of any opportunity at that hearing to argue or present evidence relevant to his motion to contest the adoption.

[18] At the hearing, Father testified about his employment and criminal histories, his addiction problems, his attendance at Alcoholics Anonymous meetings, and his desire to be a part of Child's life. Based on the record, it is clear that the adoption court considered Father's fitness and his motion to contest the adoption at the July 27, 2017, hearing. And the adoption court complied with Indiana Code Section 31-19-10-5 when it held the hearing on Father's motion

to contest the adoption before it issued the adoption decree. We reject Father's contention on this issue.

### *Period of Supervision and Report of Investigation*[4]

[19] Father next contends that the adoption court erred when it granted the adoption petition without having complied with several statutory provisions. First, he contends that the adoption court did not comply with Indiana Code Section 31-19-8-1(a), which provides that an adoption may be granted only after the court has heard evidence and after a period of supervision by a licensed child placing agency or the Department of Child Services ("DCS"). Second, he asserts that the adoption court did not comply with Indiana Code Section 31-19-8-5(a), which requires each child placing agency or the DCS to submit a written report of the investigation and recommendation as to the advisability of an adoption to the court.[5] And, third, Father asserts that the adoption court did not comply with Indiana Code Section 31-19-11-1(a)(3), which provides that "[w]henever the court has heard the evidence and finds that: . . . the report of the

---

[4] The Adoptive Parents contend that Father has waived these procedural issues because he failed to raise them in the adoption court. Adoptive Parents are correct that Father did not raise the issues in the adoption court but, "given our preference to resolve cases on their merits," we will address the merits of Father's claims. *R.K.H. v. Morgan Cty. Off. of Fam. And Child. (In re W.)*, 845 N.E.2d 229, 239 (Ind. Ct. App. 2006).

[5] Father contends that the adoption court erred when it waived the requirement for a period of supervision and report of the investigation. We agree. The adoption court can waive those requirements if one of the petitioners is a stepparent or grandparent. I.C. §§ 31-19-8-2(c) and -5(c). But that is not the case here. Nonetheless, the Adoptive Parents assert that the adoption court did not err when it waived those requirements because the length of the period of supervision is within the sole discretion of the trial court and because the report is not binding. But the Adoptive Parents do not support that contention with citation to any authority, and we reject their assertions. In the alternative, the Adoptive Parents assert that the GAL's report substantially complied with the report requirement. We disagree. The plain language of Indiana Code Section 31-19-8-5 requires a report from a child placing agency or the DCS.

investigation and recommendation under I[.]C[.] [§] 31-19-8-5 has been filed; . . . the court shall grant the petition for adoption and enter an adoption decree." We must agree with Father.

[20] As the three statutory provisions relied on by Father demonstrate, "[o]ur General Assembly has required that every adoption case—whether done by stepparent, blood relative, or a nonrelative—involve either a licensed child placing agency or DCS." *In re S.O.*, 56 N.E.3d at 81. And "the absence of any child placing agency or DCS in this case means an error has occurred." *Id*. There is no dispute that neither a licensed child placing agency nor a DCS office was ever involved with the adoption of Child. As such, there is no dispute that neither a child placing agency nor the DCS conducted a period of supervision or filed a report of the investigation and recommendation. And, in the absence of the required participation of a licensed child placing agency or the DCS, the adoption court could not find that such a report had been filed.[6] Accordingly, the adoption court erred when it granted the adoption petition.

---

[6] The Adoptive Parents contend that, even if a report and recommendation had been filed, it would not have been admissible over an objection. To support their contention, they rely on *Attkisson v. Ursey*, 65 N.E.2d 489, 491 (Ind. 1946), which held that the agency reports are not admissible over an objection in contested cases. However, this court has since held that *Attkisson* does not apply where, as here, Father's consent to the adoption is not required. *Evans v. Murray (In re M.A.S.)*, 815 N.E.2d 216, 223 (Ind. Ct. App. 2004).

### *Failure to Consolidate*

[21]     Finally, Father asserts that the adoption court erred when it failed to consolidate the paternity action with the adoption proceeding. Indiana Code Section 31-19-2-14(a) states:

> If a petition for adoption and a paternity action are pending at the same time for a child sought to be adopted, the court in which the petition for adoption has been filed has exclusive jurisdiction over the child, and the paternity proceeding *must* be consolidated with the adoption proceeding.

(Emphasis added.) Here, the Adoptive Parents filed a motion to consolidate the paternity action with the adoption proceedings, but the adoption court denied that motion. But, pursuant to Indiana Code Section 31-19-2-14(a), the court in which the petition for adoption has been filed—here, the adoption court—was required to consolidate the two pending actions. As such, the adoption court erred when it failed to consolidate the paternity action with the adoption proceeding.

### *Conclusion*

[22]     We affirm the adoption court's conclusion that Father's consent to the adoption of the Child is not required. However, we reverse the adoption court's grant of the adoption petition and we remand for proceedings not inconsistent with this opinion. On remand, we instruct the adoption court to set aside the adoption decree, order the period of supervision and report of the investigation and

recommendation by a licensed child placing agency as required by statute, and consolidate the paternity action with the adoption.

[23] Affirmed in part, reversed in part, and remanded with instructions.

Mathias, J., and Barnes, J., concur.